PHILLIP BUHER *v.* PAMELA SUE JOHNSON.

[No. 1-1172A91. Filed April 9, 1973. Rehearing denied May 10, 1973.]

*Craven & Milan,* of Indianapolis, *Carroll & Cottrell,* of Indianapolis, for appellant.

*Ruel W. Steele, Steele & Steele,* of Bedford, for appellee.

LOWDERMILK, J.—This appeal presents to this court for review two issues, namely, (1) Whether the decision of the trial court that appellant was the biological father of Jason Marcus Johnson was supported by sufficient evidence; and (2) Whether the decision of the trial court in denying appellant's request for a jury trial was contrary to law.

On June 7, 1971, plaintiff-appellee, by her mother and next friend, filed a verified petition to establish the paternity of her unborn child, and to compel defendant-appellant to support said child. A warrant was issued for defendant-appellant's arrest and on June 18, 1971, Robert F. Craven, attorney, appeared for the defendant and posted cash bond and the arrest warrant was recalled.

No further record was made in the cause until November 3, 1971, at which time plaintiff-appellee filed a motion for trial date and the cause was set for trial on December 21, 1971.

On November 30, 1971, the defendant-appellant filed a motion to take blood tests and also a request for trial by jury.

Plaintiff-appellee filed a motion to strike the request for jury trial and also filed a consent to the blood tests, on December 3, 1971. Thereafter, on December 6, 1971, defendant-appellant filed his answer to the verified petition and also filed a motion for change of venue. The court heard argument on the motions on December 21, 1971, and ruled on the same on January 26, 1972, sustaining plaintiff-appellee's motion to strike defendant's request for jury trial and denying defendaant-appellant's motion for change of venue. Later, the cause was assigned for trial on March 1, 1972, at which time defendant-appellant objected to a trial without a jury and moved for a continuance, which was by the court overruled and trial was had.

The finding and judgment of the court was that the defendant-appellant was the father of Jason Marcus Johnson who had been born out of wedlock on October 20, 1971, to the plaintiff-appellee. The court determined the support payments, prenatal and post-natal expense, and entered finding and judgment thereon, together with attorney's fees for plaintiff-appellee's attorney.

Plaintiff-appellee testified she was the mother of Jason Marcus Johnson, born out of wedlock on October 20, 1971, and defendant-appellant was the father, and identified him in court.

The parties hereto had dated for about two and one-half years and were attending Mitchell High School. They were together many times during the week and on week-ends at the homes of each of their parents, and elsewhere.

She testified she was taken to one Dr. Morrow who informed her she was pregnant, which information she related to defendant-appellant the same day, which was March 18, 1971; that they broke up on the day she informed him of her pregnancy. She further said she missed her first period in the early

part of February and talked with him several times about her problem and he said he couldn't marry her.

She stated that she and the defendant-appellant had had sexual intercourse for about one year before she became pregnant and the last intercourse between the parties before she missed her period was January 19, 1971.

She testified that defendant-appellant promised to marry her in two years after he finished school; that she and her parents talked with defendant and his parents in June, at which time he denied being the father of the child, and she did admit that she had dated two other fellows, one of which was after she knew she was pregnant, and that she never had sexual intercourse with anyone other than defendant-appellant. She further testified that sexual intercourse was not infrequent between her and defendant-appellant and that on the night she thought she became pregnant the intercourse took place in his father's Buick automobile on a country road and that no contraceptive was used by either of the parties and they had not been using any contraceptives for the last ten months. She further testified that at this particular time the defendant-appellant had his climax inside of her.

Plaintiff-appellee also testified that the defendant-appellant admitted to her and to one other person that he was the father of the child.

Defendant-appellant took the stand in his own behalf and said that on January 19, 1971, he had been at a judo class at Bedford Girl's Gym and had gone there in a pick-up truck and was not with the plaintiff-appellee at all that night. He further testified he was not with her outside of school from December, 1970, to May 27, 1971, which was the night that the parents met over the pregnancy.

He further testified that he had had intercourse with the plaintiff-appellee for two to three months before he quit dating her.

Two witnesses, also students, testified as to defendant-

appellant's whereabouts on the night of January 19th, corrobating defendant-appellant's evidence, and other witnesses testified for and in behalf of plaintiff-appellee.

One Dr. Fountaine testified he ordered a sperm count for the defendant on February 29, 1972, the results of which were abnormal and that in his opinion the defendant could not have fathered the child with his sperm count, which showed less than 10,000,000 sperm. He further testified that as of one year prior to February 29, 1972, he seriously doubted if the defendant was capable of fathering a child absent any history of any serious illness in the past year. Dr. Fountaine testified that conception with a sperm count of 10,000,000 was highly improbable, but possible.

Considering the evidence most favorable to the plaintiff-appellee, we are of the opinion that the judgment of the trial court that the defendant-appellant was the father of Jason Marcus Johnson was supported by sufficient evidence and there was no error in the court's finding and judgment on that issue. *Libertowski* v. *Hojara* (1967), 141 Ind. App. 439, 228 N.E.2d 422.

Defendant-appellant next contends that the court's action in denying the request for jury trial was in error because:

"1. His request for jury trial was *not* untimely.
2. Even if his request were untimely, and we do not admit that it was, it should have been granted in any event."

He contends that Rule TR. 6(C) of the Indiana Rules of Procedure states that if a responsive pleading is required under the Rules it should be served within 20 days after service of the prior pleading. He further says that it therefore follows that if a responsive pleading is not required under the Rules it need not be served within 20 days after the prior pleading and it has been held that a responsive pleading is not required in a paternity proceeding under the children born out of wedlock statute. He cites as authority *State ex rel. Beaven* v. *Marion Juvenile Court* (1962), 243 Ind. 209, 184

N.E.2d 20. In the case at bar defendant filed his request for jury trial on November 30, 1971, which was five and one-half months after the petition had been filed. He contends that the filing of an answer on December 6, 1971, almost six months after the petition was filed, did not make it untimely, since, as has been seen under the Rules, an answer filed in a paternity proceeding need not be filed within 20 days after the original complaint, and cites Rule TR. 38 (B).

It is necessary for this court in arriving at a correct decision in this cause to rely on the case of *State ex rel. Beaven* v. *Marion Juvenile Court, supra,* although the same had been filed and tried under the former Rules of the Supreme Court of Indiana.

Although there is a difference in rules which is brought about by the difference in time, we are not unmindful of the law as set out by Chief Justice Arterburn in the *Beaven* case. In *Beaven* the relator had asked for a writ of mandate to compel the respondent to grant a jury trial in a paternity proceeding. The trial court denied the request ". . . because it did not comply with Rule 1-8A. That is to say, the request was not filed within ten days 'after the issues are first closed . . ., or if the issues are closed without answer by operation of law.' "

In *Beaven* the action was filed May 20, 1960, and a series of continuances granted until April 6, 1961, when new counsel appeared for the relator and filed an answer and requested a jury trial, which the court refused.

Justice Arterburn looked to the conduct of the parties and considering the delay and lack of interest and desire to proceed with the case on the part of the relator and said that if the parties by their actions with respect to the case adopt the position that the cause will be tried on the issues asserted in the petition of the relator without formality of pleadings as required in civil cases generally, that the parties by such con-

duct (by their own conduct) adopt the position that insofar as the closing of the issues is necessary to an expeditious disposition of the case, the issues will be considered closed " 'by the operation of law.' " And, speaking further, he said:

". . . A defendant who either actively or passively consents to the setting of a case for trial without the issues being formally closed by the filing of an answer and thus treats the issues as being closed by operation of law, cannot thereafter demand any action in the case which, by rule of this court, he should have asserted prior to the closing of the issues.

"Under the facts of this case, if a party makes no timely objections as soon as he learns of the setting of a case for trial where the issues are not yet formally closed by an answer, he has waived his opportunity to request a jury trial under the rule of this court.

"To require the trial court to grant a jury trial under the facts in this case would establish a precedent under which a defending party in any case could delay filing his answer (even though not required to file an answer under the procedure) until the day of trial and then request a jury trial, or, under the rule with reference to a change of venue, request a change of venue. To permit such an interpretation of our rule is not consistent with its objective."

An action to determine the paternity of a fatherless child is one in which either or both of the parties may request and receive a trial by jury. However, it is necessary that the parties or parties asking the jury must comply with the Supreme Court Rules pertaining to the manner of requesting and securing a jury trial.

It is well recognized in paternity actions that the issues are deemed closed by operation of law. *Roe* v. *Doe* (1972), 154 Ind. App. 203, 289 N.E.2d 528.

We are cognizant of the fact that the present Supreme Court Rule TR. 6(C)—Service of pleadings and Rule 12 motions, provides: "A responsive pleading required under these rules, shall be served within twenty [20] days after service of the prior pleading. * * *"

In the case before us the defendant-appellant was not required to file an answer in the trial court, but the issues were closed by operation of law.

Rule TR. 38 (B) reads as follows:

"(B) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by filing with the court and serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than ten [10] days after the first responsive pleading to the complaint, or to a counterclaim, cross-claim or other claim if one properly is pleaded; *and if no responsive pleading is filed or required, within ten [10] days after the time such pleading otherwise would have been required.* Such demand is sufficient if indorsed upon a pleading of a party filed within such time." (Our emphasis.)

Defendant-appellant urges that it is extremely important to note under Rule TR. 38 (B) ". . . if no responsive pleading is filed or required . . ." a person must file a demand for jury trial within ten days after the time such pleading otherwise would have been required. He further urges that no responsive pleading was required in his case and with that we agree. However, his contention that since one was filed that Rule TR. 38 (B)'s alternative requirement as to demand for jury trial applied is not correct and in our opinion under the cases hereinabove referred to the defendant-appellant had the right to file a request for jury trial but has waived his right to a jury trial by not having filed his request for such within ten [10] days after the time such pleading otherwise would have been required.

Rule TR. 38 (B) limits the time within which a party may request a jury trial. It is not consistent with the spirit of this Rule to allow a defendant to wait five and one-half months, and file a useless answer, simply for the purpose of giving efficacy to an otherwise untimely motion for a jury trial. Thus, if a party wishes to file a responsive pleading in an action where such pleading is not re-

quired, he must, nevertheless, follow the guidelines set down in the Rules and file such pleading within the time it otherwise would have been required.

It is our opinion that the trial court was correct in his ruling in striking the motion for and denying a jury trial.

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.