Tommy L. HUMBERT, Jr.,
Appellant–Respondent,

v.

Kristy Lynn SMITH, Appellee–Petitioner.

No. 18A04–9504–CV–149.

Court of Appeals of Indiana.

Sept. 28, 1995.

Transfer Granted Feb. 14, 1996.

Humbert is the natural father of Kristy Lynn Smith's child.

We affirm.

## ISSUES

Humbert raises three issues for our review which we reorder and rephrase as:

1. Did the trial court err when it admitted the results of Humbert's blood test without proper foundation?

2. Is the trial court's decision supported by sufficient evidence?

3. Did the trial court err when it did not consider evidence of Smith's alleged fraud upon the court?

## FACTS

On May 20, 1993, Smith gave birth to a child, M.S. During the possible period of conception, Smith had sexual relations with three men, including Humbert. Humbert admitted having relations with Smith on August 22, 1992, 39 weeks before M.S. was born.

Blood tests were administered to the three men with whom Smith had relations during the relevant period. Humbert's test results showed a probability of paternity of 99.97%; test results of the other two men excluded them as the father of M.S.

On June 20, 1994, Smith filed a petition to establish paternity for M.S., alleging that Humbert was the child's natural father. After a bench trial, Humbert was found to be so. It is from this order that Humbert appeals.

## DISCUSSION

### I.

Humbert contends that the trial court erred by admitting the report of the results of his blood test without first establishing a proper foundation for the report. Although the test results were admitted pursuant to IND.CODE 31–6–6.1–8(b) (1993), he argues that the statute is superseded by the Indiana Rules of Evidence, Rule 803(6).[1]

---

Dale E. Hunt, Dunnuck & Associates, Muncie, Indiana, for appellant.

Pamela Carter, Attorney General, Frances Barrow, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

RILEY, Judge.

Respondent–Appellant Tommy L. Humbert, Jr. appeals from a final decree of the Delaware Circuit Court, concluding that

---

1. Humbert raises additional arguments regarding the applicability of I.C. 31–6–6.1–8(b) to his action; however, because our holding on this issue is dispositive, we do not reach these arguments.

During her testimony, Smith offered into evidence the report of the results of the blood tests done on M.S. and Humbert. Humbert objected to the report because Smith did not establish a proper foundation for the admission of the report, and was overruled pursuant to I.C. 31–6–6.1–8(b) which allows blood or genetic test results to be admitted without foundation when the party opposing admission fails to file a written objection at least thirty days before the hearing at which the test results may be offered as evidence.[2]

Customarily, when a statute, purporting to establish a rule of evidence, conflicted with a common law rule of evidence established by the Indiana Supreme Court, the supreme court rule prevailed and the statute was a nullity. *Hawkins v. Auto–Owners Ins.* (1993), Ind., 608 N.E.2d 1358; I.C. 34–5–2–1; *Brim v. State* (1993), Ind.App., 624 N.E.2d 27, 33, *trans. denied.*[3] However, since our supreme court adopted the Indiana Rules of Evidence on August 24, 1993, with an effective date of January 1, 1994, a statute which conflicts with a rule of evidence should be reviewed in a manner similar to our review of statutes which conflict with the trial and appellate rules. *Fisher v. State* (1994), Ind. App., 641 N.E.2d 105, 107, n. 2. It is on this basis that we resolve the present issue.

**2.** I.C. 31–6–6.1–8(b) states, in relevant part:

> A party may object to the admissibility of genetic test results obtained under subsection (a) if the party files a written objection at least thirty (30) days before a scheduled hearing at which the test results may be offered as evidence. If a party does not file an objection under this subsection, the test results are admissible as evidence of paternity without the necessity of:
> (1) foundation testimony; or
> (2) other proof;
> regarding the accuracy of the test results.

**3.** In *Brim,* this court found that our supreme court had adopted Federal Rule of Evidence 403 in *Hardin v. State* (1993), Ind., 611 N.E.2d 123, and F.R.E. 404(b) in *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, and thus I.C. 35–37–4–14, which provided that evidence of a previous battery was admissible for purposes of proving motive, intent, identity, or common scheme and design, was a nullity and could not provide a basis upon which the evidence of the previous batteries could be admitted. *Brim,* 624 N.E.2d

The Indiana Supreme Court has the inherent power to establish rules governing the course of litigation in our trial courts. *Browning v. Walters* (1993), Ind.App., 620 N.E.2d 28, 31; *see* I.C. 34–5–1–2 and I.C. 34–5–2–1. Our courts have held repeatedly that in the event of a conflict between a procedural statute and a procedural rule adopted by the supreme court, the latter shall take precedence. *Anderson v. Horizon Homes* (1995), Ind.App., 644 N.E.2d 1281, 1288, *trans. denied; see, e.g., Augustine v. First Fed. Sav. & Loan Ass'n of Gary* (1979), 270 Ind. 238, 241, 384 N.E.2d 1018, 1020; *Neeley v. State* (1974), 261 Ind. 434, 434, 305 N.E.2d 434, 435; *Yang v. Stafford* (1987), Ind.App., 515 N.E.2d 1157, 1160, *reh'g denied, trans. denied.* When a statute conflicts with the rules of procedure, the rules of procedure govern, and phrases in statutes which are contrary to the rules of procedure are considered a nullity.[4] *Taylor v. Lewis* (1991), Ind. App., 577 N.E.2d 986, 989, *reh'g denied, trans. denied.*

To be "in conflict," it is not necessary that the rule and the statute be in direct opposition. *Spencer v. State* (1988), Ind. App., 520 N.E.2d 106, 109, *reh'g denied, trans. denied.* Rather, the rule and the statutes need only be incompatible to the extent that both could not apply in a given situation. *Id.; Matter of Little Walnut Creek Conser-*

at 33; *see also Day v. State* (1994), Ind.App., 643 N.E.2d 1, 2, *trans. denied.*

**4.** Indiana law makes a distinction between the substantive and procedural aspects of litigation. *State ex rel. Hatcher v. Lake Superior Court* (1986), Ind., 500 N.E.2d 737, 739. Substantive law fixes "duties, establish[es] rights and responsibilities among and for persons, natural or otherwise." *State ex rel. Blood v. Gibson Circuit Court* (1959), 239 Ind. 394, 400, 157 N.E.2d 475, 478, *reh'g denied.* This has been done by the Legislature in I.C. 31–6–6.1–8(a) which sets out the substantive requirements for the admission of blood or genetic testing in paternity. The statute provides that "[u]pon the motion of any party, the court shall order all of the parties to the action to undergo blood or genetic testing. The tests shall be performed by a qualified expert approved by the court." Once the right is conferred, the time, manner, and method of exercising this right, that is, its procedural aspect, lies with the supreme court in its rule making power, *id.,* and, in this case, is articulated in Evid.R. 803(6).

vancy Dist. (1981), Ind.App., 419 N.E.2d 170, 171. Further, a procedural rule enacted by statute may not operate as an exception to a procedural rule having general application. *State v. Bridenhager* (1972), 257 Ind. 699, 702, 279 N.E.2d 794, 796.

■ Pursuant to Evid.R. 803(6), a report of the results of blood or genetic testing for paternity actions is admissible under the business records exception to hearsay once a proper foundation is established. *Baker v. Wagers* (1984), Ind.App., 472 N.E.2d 218, 222, *reh'g denied, trans. denied.*[5] I.C. 31–6–6.1–8(b) allows blood or genetic test results to be admitted without establishing a foundation if the party opposing admission fails to file a written objection at least thirty days before the hearing at which the test results may be offered as evidence. Evid.R. 803(6) and I.C. 31–6–6.1–8(b) conflict in that they both provide the means by which a report of the results of blood or genetic testing is admitted into evidence in paternity actions which cannot both apply in this situation. I.C. 31–6–6.1–8(b) also operates as an exception to Evid.R. 803(6), a procedural rule of general application. Therefore, I.C. 31–6–6.1–8(b) has no force and effect to the extent it conflicts with the evidence rule, and the admission of reports is governed by Evid.R. 803(6). *See State ex rel. Jeffries v. Lawrence Circuit Court* (1984), Ind., 467 N.E.2d 741, 742.

■ In view of our decision, the trial court erred by admitting the results of Humbert's blood test without proper foundation. However, this does not end our inquiry. Not all trial court error is reversible. Ind.Trial Rule 61; *Vance v. State* (1994), Ind., 640 N.E.2d 51, 55. An error is harmless if there is sufficient competent evidence to support the trial court's judgment. *Harpe v. Beuoy* (1966), 139 Ind.App. 690, 694, 215 N.E.2d 553, 556.

■ Our standard of review of the sufficiency of the evidence is well established.

We are neither permitted to reweigh the evidence nor to judge the witnesses' credibility. *Goodman v. State* (1993), Ind.App., 611 N.E.2d 679, 681, *reh'g denied, trans. denied, In re Paternity of Bratcher* (1990), Ind.App., 551 N.E.2d 1160, 1162. We look instead to the evidence most favorable to the judgment and the reasonable inferences that follow therefrom. *Id.* at 1162. If the evidence has sufficient probative value to sustain the trial court's judgment, the judgment will not be overturned on appeal. *H.W.K. v. M.A.G.* (1981), Ind.App., 426 N.E.2d 129, 132; *Roe v. Doe* (1972), 154 Ind.App. 203, 213, 289 N.E.2d 528, 535.

■ Paternity actions are civil proceedings and the alleged father must be proved to be such by a preponderance of the evidence. *H.W.K.,* 426 N.E.2d at 133. In the present case there was probative testimony that during the time period of conception Smith engaged in sexual intercourse with three men, two of which were excluded as M.S.'s father on the basis of blood tests. Humbert and Smith testified that they engaged in unprotected sexual intercourse 39 weeks before M.S. was born. "The testimony of the mother regarding an act of sexual intercourse with the putative father, coupled with the probability of conception at such time, is sufficient to support the trial court's determination that he is the father of the child." *Id.; Beaman v. Hedrick* (1970), 146 Ind.App. 404, 411, 255 N.E.2d 828, 832 (An act of intercourse coupled with the *probability* of conception at that time will support a determination of paternity. (emphasis in original)). Accordingly, we find the evidence sufficiently supports the determination of paternity and the erroneous admission of Humbert's blood test was harmless error.

## II.

Humbert contends that the trial court erred by failing to apply the law correctly to the evidence presented. He argues that

5. In *Baker,* 472 N.E.2d 218, we held that the report on blood or genetic test results were admissible as a business record even though it was prepared specifically for litigation because "[t]he traditional attributes of trustworthiness associated with business documents were not shorn from these test results by virtue of their being conducted pursuant to a court order, and their admissibility should not be impaired by an exception to an exception molded to counter dangers not herein present." *Id.* at 222.

"[s]ince the State's evidence barely supports an argument that there is a "possibility" that [Humbert] could be this child's father, [thus] ... the judgment of the trial court ... is clearly erroneous as a matter of law and ... must be reversed." Appellant's Brief at 14. This argument also attacks the sufficiency of the evidence and thus is governed by the aforementioned standard.

■■■ Humbert asserts that "[i]t is clear to a reasonable medical certainty that August 22, 1992 *CANNOT* be the date when this child was conceived." Appellant's Brief at 10 (emphasis in original). He bases this assertion on M.S.'s birth certificate and the record of Smith's pre-natal examinations which estimate M.S.'s gestational age to be 41 weeks at her birth, and also upon the report of a post-natal examination of M.S. entitled "Clinical Estimation of Gestational Age: An Approximation Based on Published Data" which indicates that the baby was born after a gestation of either 40–41 weeks or 39–41 weeks. All three pieces of evidence are, by their own designation, estimates and do not, without more, disprove that M.S. could have been conceived on August 22, 1992, 39 weeks before her birth.

Humbert argues that Smith had sexual relations with "at least two other men close to the time of possible conception." Appellant's Brief at 11. However, Smith admitted to having intercourse with two other men in July, 1992, and blood tests excluded both men as possible fathers.

Humbert argues that he may not be able to father a child because he and another woman attempted unsuccessfully for three and a half years to have a child and that the woman later became pregnant by another man. However, he also admitted that he had never been tested for sterility and presented no evidence, apart from his testimony, on his possible infertility. *See also Buher v. Johnson* (1973), 155 Ind.App. 693, 697, 294 N.E.2d 625, 627 (The evidence supported the finding that the defendant was the father of the child, despite a doctor's testimony that the defendant's sperm count was so low that conception was highly improbable.).

He next argues that Smith told him that M.S. was on antibiotics when the blood test was done and the test may be inaccurate; however, Humbert failed to present evidence indicating that antibiotics have any effect on the accuracy of paternity testing.

Humbert argues that the August 22 sexual act was incomplete because he did not ejaculate. He did admit to having intercourse without employing any means of birth control. He also argues that M.S. does not resemble his family. Although Humbert has never seen M.S., he observed from a picture of her that she did not have his family's "teeny, tiny, small ears." (R. at 148).

■■■ Taken as a whole, these arguments do little more than ask this court to reweigh the evidence which, according to our standard, we will not do. It is the trier of fact who must resolve conflicts in the evidence and determine which witnesses to believe or disbelieve. *Cuppett v. State* (1983), Ind., 448 N.E.2d 298, 300; *Roberson v. State* (1982), Ind., 430 N.E.2d 1173, 1174.

The evidence is of sufficient probative value to support the trial court's determination.

### III.

Humbert contends that the judgment in this case is based on knowing or aggravated falsehoods and cannot stand because it is a fraud upon the court. He points out five instances of such falsehoods:

1. Smith testified that Humbert was her only sexual partner in August, 1992; however, a witness testified that he and Smith engaged in sexual relations as late as the first or second week of August, 1992.

2. Smith testified that she told the same witness that he was the father of her child; however, she denied telling him that on August 31, 1992, the date on which the witness testified that Smith told him of her pregnancy.

3. Smith testified that M.S. was a full-term baby, when according to her prenatal examination records and the M.S.'s birth certificate, the child was a post-term baby.

4. Smith testified that Humbert offered her a sum of money to "settle with her." Appellant's Brief at 16. Humbert denied any offer.

5. Smith allegedly knew that the blood test results were tainted because M.S. was on antibiotics at the time and yet did not protest their admission.

■■■■ A judgment may be attacked directly on the basis of fraud in three different ways: intrinsic fraud, extrinsic fraud, and fraud on the court. *In re Paternity of K.M.* (1995), Ind.App., 651 N.E.2d 271, 277. Fraud on the court is a concept that has been narrowly applied and is limited to the most egregious circumstances involving the court. *Id.; see also In re Paternity of Tompkins* (1988), Ind.App., 518 N.E.2d 500, 504. If the moving party "establishes that an unconscionable plan or scheme was used to improperly influence the court's decisions, and that such acts prevented the losing party from fully and fairly presenting his case or defense, then 'fraud on the court' exists." *Id.* at 507.

■■ In the present case, most of the alleged falsehoods amount to little more than conflicting testimony and do not, without more, show a deliberate plan or scheme. Assuming arguendo, that Smith made contradictory statements to Humbert and others regarding the identity of M.S.'s natural father, it is not enough to show a possibility that the mother misled the father and the court as to the child's paternity. *Paternity of K.M.*, 651 N.E.2d at 277. In the context of fraud on the court, an unconscionable plan or scheme has been defined as "a deliberately planned and carefully executed scheme to defraud." *Id.* (citations omitted). Humbert has failed to show such a deliberate attempt to defraud the court. Further, he does not allege, nor do we see, that Humbert was denied the opportunity to fully and fairly present his case or defense to the trial court. Thus, the trial court did not err in failing to consider the issue of fraud on the court.

Judgment affirmed.

DARDEN and STATON, JJ., concur.