**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**ROBERT D. KING, JR.**
**DAVID R. THOMPSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana



FILED

Aug 14 2012, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE PATERNITY OF I.B., )
)
R. P., )
)
    Appellant-Respondent, )
)
        vs. )    No. 84A01-1109-JP-456
)
M. B., As Next Friend of I. B., )
)
    Appellee-Petitioner. )

APPEAL FROM THE VIGO CIRCUIT COURT
The Honorable David R. Bolk, Judge
The Honorable Daniel W. Kelly, Magistrate
Cause No. 84C01-1008-JP-919

**August 14, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

<u>STATEMENT OF THE CASE</u>

Appellant-Respondent, R.P., appeals the trial court's Order establishing his paternity to the minor child, I.B.

We affirm.

<u>ISSUES</u>

R.P. raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion when it denied R.P.'s motion to dismiss because the State lacked standing to bring the paternity action; and

(2) Whether the evidence was sufficient to find that R.P. was the biological father of I.B.

On cross-appeal, Appellee-Respondent, M.B. as next friend of I.B. (M.B.), raises one issue, which we restate as: Whether the trial court abused its discretion when it excluded the testimony of an expert witness.

<u>FACTS AND PROCEDURAL HISTORY</u>

From July 2003 until May 2004, M.B. and R.P. were in a relationship. During August of 2003, M.B. and R.P. engaged in unprotected sexual intercourse. The following September, M.B. discovered that she was five weeks pregnant and on May 11, 2004, I.B. was born. When I.B. was less than one year old, R.P. mailed money orders to M.B. totaling approximately two hundred dollars. The money orders were marked out to I.B.

and were "to take care of his daughter." (Transcript p. 75). R.P. told M.B. that if she took him to court, she would receive less money.

In January of 2009, M.B. became unemployed and the following year, she applied to receive federal assistance through the Temporary Assistance for Needy Families (TANF) program. Upon applying for TANF, employees at TANF informed M.B. that they needed the name of I.B.'s presumed father since a dependent child or parent cannot qualify for TANF unless the mother of the dependent child initiates court proceedings to establish paternity.

On August 5, 2010, M.B., as next friend of I.B., filed a petition to establish paternity alleging R.P. to be the biological father. In her petition, M.B. stated that she had "signed an agreement authorizing the State of Indiana to establish and/or enforce an order for the support of the child(ren) on her behalf under the provisions of Title IV-D of the Social Security Act." (Appellant's App. p. 11). That same day, the State filed a motion to intervene in the action "for the purpose of enforcing the provisions of Title IV-D of the Social Security Act." (Appellant's App. p. 13). The trial court granted the motion. On August 17, 2011, the trial court conducted a hearing on M.B.'s petition. During the hearing, R.P. objected to the testimony of the State's witness, Dr. Michael Schmiederer (Dr. Schmiederer), the Director of Paternity at Laboratory Corporation of America (Labcorp). R.P. contested the testimony's admission because Dr. Schmiederer testified by phone, contrary to Indiana Trial Rule 43 which mandates the taking of witnesses' testimony in open court and because he had not personally performed the

DNA testing but was testifying from a prepared DNA report. The trial court overruled R.P.'s objection to Dr. Schmiederer's testimony by phone but allowed the testimony while it took R.P.'s objection with respect to the personal knowledge under advisement.

On August 18, 2011, the trial court issued its Order, denying R.P.'s motion to dismiss, noting that "[t]he [c]ourt finds that [M.B.'s] filing by next friend is a proper use of the child's ability to file to establish paternity beyond the two-year limitations period applicable to the parents." (Appellant's App. p. 6). However, the trial court sustained R.P.'s objection to Dr. Schmiederer's testimony and struck it from the record. Nevertheless, in light of the totality of the evidence before it, the trial court concluded that R.P.'s paternity of I.B. had been established by a preponderance of the evidence, ordered R.P. to pay eighty-eight dollars per week in child support, determined a child support arrearage in the amount of $4,840, and granted R.P. visitation in accordance with the Indiana Parenting Time Guidelines.

R.P. now appeals and M.B. cross-appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

APPEAL

I. *Standing*

Initially, R.P. contends that the State did not have standing to pursue the paternity action. Specifically, he asserts that because M.B. never requested the State to file the paternity action in accordance with Ind. Code § 31-14-4-1, but instead opposed the filing

4

of the petition, the trial court has no jurisdiction to hear the case and the action should be properly dismissed.

Standing focuses generally upon the question whether the complaining party is the proper person to invoke the court's power and the trial court's decision in this respect is reviewed *de novo*. *See J.R.W. ex rel. Jemerson v. Watterson*, 877 N.E.2d 487, 490 (Ind. Ct. App. 2007). The facts alleged in the Complaint must be taken as true, and dismissal for lack of standing is appropriate only where it appears that the plaintiff cannot be granted relief under any set of facts. *Id.*

Indiana Code section 31-14-4-1 enumerates the parties permitted to file a paternity action as follows:

> (1) The mother or expectant mother.
> (2) A man alleging that:
> > (A) he is the child's biological father; or
> > (B) he is the expectant father of an unborn child.
> (3) The mother and a man alleging that he is her child's biological father, filing jointly.
> (4) The expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly.
> (5) A child.
> (6) The department or a county office of family and children under section 3 of this chapter.
> (7) The prosecuting attorney under section 2 of this chapter.

Section 2 of I.C. § 31-14-4 specifies that the prosecuting attorney shall upon the request of the child, the mother or expectant mother, a man alleging to be the father or expectant father, the department, or the county office of family and children file a paternity action and represent the child in the action.

Here, M.B. filed a petition to establish paternity on August 5, 2010, which was captioned in the name of M.B., who filed the paternity action as next friend of I.B. In the petition, M.B. affirms, under the penalties of perjury, that she "consents to act as next friend to establish paternity of the child" and that she "has signed an agreement authorizing the State of Indiana to establish and/or enforce an order for the support of the child(ren) on her behalf under the provisions of Title IV-D of the Social Security Act." (Appellant's App. pp. 10-11). That same day, the State filed a motion to intervene "for the purpose of enforcing the provisions of Title IV-D of the Social Security Act." (Appellant's App. p. 13).

During the hearing, M.B. testified that for TANF purposes, she decided to file the paternity action. She clarified that she did not type the petition and guessed the State had prepared it. However, she did not dispute her signature or the petition's content. When asked by R.P. if she wanted to withdraw the petition, she stated "I would rather knowing [sic] that it's on paper that he is her father. But I want nothing from him." (Tr. p. 74).

It is clear that M.B. commenced the paternity action as her minor child's next friend pursuant to I.C. § 31-14-4-1 and requested the State to establish and enforce an order for I.B.'s support on her behalf pursuant to I.C. § 31-14-4-2. Therefore, we find that the trial court had jurisdiction over the action filed by M.B. as next of friend and properly granted the State's motion to intervene.

II. *Sufficiency of the Evidence*

Next, R.P. asserts that the evidence is insufficient to prove by a preponderance of the evidence that he is the biological father of I.B. Our standard of review of the sufficiency of the evidence is well established. We are neither permitted to reweigh the evidence nor to judge the witnesses' credibility. *Humbert v. Smith*, 655 N.E.2d 602, 605 (Ind. Ct. App. 1995), *trans. denied*. We look instead to the evidence most favorable to the judgment and the reasonable inferences that follow therefrom. *Id*. If the evidence has sufficient probative value to sustain the trial court's judgment, the judgment will not be overturned on appeal. *Id*.

Paternity actions are civil proceedings and the alleged father must be proved to be such by a preponderance of the evidence. *Id*. In a paternity action, the testimony of the mother regarding an act of sexual intercourse with the defendant, coupled with the probability of pregnancy, is sufficient to support a determination that the defendant is the father of the child. *First Student, Inc. v. Estate of Meece*, 849 N.E.2d 1156, 1164 (Ind. Ct. App. 2006), *trans. denied*. An act of intercourse plus the mere possibility of conception, however, cannot serve to support such determination. *Beaman v. Hedrick*, 255 N.E.2d 828, 832 (Ind. Ct. App. 1970).

I.B. was born May 11, 2004. M.B. testified that during August of 2003, M.B. and R.P. engaged in unprotected sexual intercourse. The following September, M.B. discovered that she was five weeks pregnant. Although M.B. admitted that she also had sexual intercourse with another man, this intercourse had taken place in July 2003 and he

had used a condom. Based on these facts, we conclude that the evidence is sufficient to support a determination of paternity.

CROSS-APPEAL

In her cross-appeal, M.B. contends that the trial court abused its discretion when it excluded the testimony of Dr. Schmiederer as well as the DNA test results. Although R.P. objected to Dr. Schmiederer testifying over the phone in violation of Indiana Trial Rule 43 and Administrative Rule 14, the trial court overruled the objection and R.P. did not appeal this decision in his appellate brief.[1] Instead, M.B. now cross-appeals the trial court's decision excluding Dr. Schmiederer's testimony based on the fact that he was not personally present when the DNA testing occurred. Specifically, R.P. objected to the doctor "testifying about the accuracy of [] the procedures and the protocols in this case because he doesn't have personal knowledge of that." (Tr. p. 35). After taking its decision under advisement, the trial court sustained the objection and excluded the testimony.

The standard of review for admissibility is abuse of discretion. *Weinberger v. Boyer*, 956 N.E.2d 1095, 1104 (Ind. Ct. App. 2011), *trans. denied*. The trial court abuses its discretion only when its action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id*. Even when the trial court erred in its

---

[1] In so far as R.P. now intends to dispute the trial court's decision in his response to the M.B.'s cross-appeal, he has waived his argument. *See* Ind. Appellate Rule 46(D).

ruling on the admissibility of evidence, this court will reverse only if the error is inconsistent with substantial justice. *Id.*

Here, Dr. Schmiederer testified that he is the Director of Paternity at LabCorp where he oversees the signing and evaluation of paternity cases, the comparisons, the calculations and the final report. Even though he did not personally perform the DNA tests in the current case, he is familiar with the procedures used at LabCorp and during trial, he interpreted the results specified in the DNA report, which had been prepared by one of his employees and which was not admitted by the trial court. Based on the DNA report, Dr. Schmiederer opined that R.P. is the biological father of I.B.

Indiana Evidence Rule 703 provides that

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. Experts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field.

Thus, under some circumstances, Evid R. 703 allows an expert witness to testify to opinions based on facts not before the factfinder. In *Hopkins v. State*, 579 N.E.2d 1297, 1302 (Ind. 1991), our supreme court held that "the theory and techniques of DNA identification currently available are generally accepted in the scientific community as capable of producing reliable results." Dr. Schmiederer was made aware of the DNA report before the hearing and based his opinion of R.P.'s paternity on his interpretation of this report. As DNA testing is a generally accepted scientific method to determine paternity, the trial court abused its discretion by excluding Dr. Schmiederer's opinion

testimony. However, because the presented evidence is sufficient to conclude by a preponderance of the evidence that R.P. is the minor child's biological father, the exclusion of the testimony amounted to a harmless error.

CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied R.P.'s motion to dismiss. Additionally, we find that the evidence was sufficient to find that R.P. was the biological father of I.B. On cross-appeal, we conclude that the trial court committed harmless error when it excluded the testimony of Dr. Schmiederer.

Affirmed.

BAILEY, J. and CRONE, J. concur