

FILED

Dec 13 2018, 8:57 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jarvis E. Newman, III
Wigent & Newman
Ligonier, Indiana

Helen L. Newman
Birch Kaufman, LLC
Syracuse, Indiana

ATTORNEYS FOR APPELLEE

John M. Haecker
Squiller & Hamilton, LLP
Auburn, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: The Paternity of K.H., Rebekah Harris (Mother), *Appellant-Respondent,* <br><br> v. <br><br> Jon Cochran (Father), *Appellee-Petitioner.* | December 13, 2018 <br><br> Court of Appeals Cause No. 18A-JP-1795 <br><br> Appeal from the Kosciusko Superior Court <br><br> The Honorable David C. Cates, Judge <br><br> Trial Court Cause No. 43D01-1712-JP-478 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent/Cross-Appellee, Rebekah Harris (Mother), appeals from the trial court's paternity judgment and custody order in favor of Appellee-Petitioner/Cross-Appellant, Jon Cochran (Father). Father cross-appeals the trial court's denial of his petition to change the surname of the minor child (Child) to his own.

We affirm.

# ISSUES

Mother presents four issues on appeal, which we restate as:

(1) Whether the trial court properly denied Mother's motion to dismiss Father for lack of standing;

(2) Whether the trial court's paternity determination was supported by the evidence;

(3) Whether the trial court properly took judicial notice of the records from a child in need of services (CHINS) proceeding involving Child; and

(4) Whether the trial court acted within its discretion when it admitted evidence of a personality inventory taken by Mother.

In addition, Father presents one issue on cross-appeal, which we restate as: Whether the trial court's denial of Father's motion to change Child's surname to his own was clearly erroneous.

# FACTS AND PROCEDURAL HISTORY

[5] Mother gave birth to Child in September of 2014. On May 19, 2017, the State filed a petition alleging that Child was a CHINS due to the fact that Mother had been pulled over for a traffic infraction and was found to have been driving with Child and a variety of illegal drugs in the car. Mother was arrested for possession of methamphetamine, among other charges. During the pendency of the CHINS proceeding, Mother identified Father as Child's father, and Father learned for the first time of Child's existence. On October 27, 2017, Father filed a petition in Noble County to establish paternity of Child. On December 8, 2017, the paternity case was removed to Kosciusko County where, on February 8, 2018, Father filed an amended petition to establish paternity, custody, parenting time, child support, and name change, all as Child's next friend.[1] Child was ultimately placed with Father during the CHINS proceedings.

[6] As part of the CHINS action, at the request of the Department of Child Services (DCS), on March 6, 2018, Mother underwent a psychological evaluation at the Bowen Center in Warsaw, Indiana. Jessicah Walker, M.A., Pre-Doctoral Intern (Walker), conducted the evaluation which was based on a clinical

---

[1] Mother filed motions to dismiss both of Father's petitions based on her contention that he was time-barred from filing the petitions in his own right and could not file the petitions on Child's behalf. On March 9, 2018, the trial court denied Mother's motions to dismiss. Mother sought to have the trial court's denial order certified for interlocutory appeal, but, after litigation regarding certification of the issue for appeal, the trial court denied Mother's certification motion on May 4, 2018, after the final hearing in the instant case. The trial court found as part of its paternity judgment that it had jurisdiction over the parties.

interview regarding Mother's medical, mental health, family, social, educational, employment, legal, and substance abuse histories. Mother also submitted to three diagnostic surveys, including the MMPI-2-RF (MMPI), which "is a widely used and accepted adult personality inventory that is frequently used as an assessment of psychological health and psychopathology." (Exhibit 2 Vol. III, p. 4). Although she cautioned that Mother's results on the MMPI may not be accurate due to over-reporting, Walker indicated in her report that the MMPI indicated that Mother had a variety of pathologies that were "generally congruent with [Mother's] report although the findings present an even more severe picture of [Mother's] emotional cognitive, and interpersonal functioning than she reported." (Exh. 2 Vol. III, p. 5). Apart from the MMPI results, Walker also concluded that, "[d]iagnostically," Mother met the criteria for Posttraumatic Stress Disorder; Severe Cannabis Use Disorder; Severe Amphetamine-Type Substance Use Disorder; Moderate Sedative, Hypnotic, or Anxiolytic Use Disorder; and Moderate Cocaine Use Disorder. (Exh. 2 Vol. III, p. 6).

[7] On May 1, 2018, the trial court conducted an evidentiary hearing on Father's petition. Mother provided the following testimony:

> Counsel: Ma'am, you are the mother of [Child], correct?
>
> Mother: Correct.
>
> Counsel: Jon Cochran is the father of [Child], correct?
>
> Mother: Correct.

Counsel: And you named him as the father as part of the CHINS case, correct?

Mother: That is correct to the best of my knowledge he is the father.

Counsel: And you did so because you had sexual intercourse with him in a time frame that was consistent with him being the father, correct?

Mother: Correct.

Counsel: You did not name any other individuals as a potential father, correct?

Mother: That is correct.

Counsel: And you've never challenged any finding that he is the father, you've never claimed that anyone else is the father, correct?

Mother: Correct.

(Transcript Vol. II, pp. 11-12).

[8]     Father called Walker to testify as an expert witness. Walker established that she possessed a master's degree in counseling psychology and that she was just about to complete her doctorate. Walker's credentials enabled her to complete psychological testing and to render opinions and diagnoses under the supervision of a licensed psychologist. Walker had been trained to administer the MMPI and had experience administering it. Walker's work on Mother's psychological examination, including the MMPI results, was reviewed by Walker's supervisor, Ashley Hunter, Psy.D. During voir dire on Walker's expert credentials, the trial court admitted into evidence what Mother claimed

was a qualifications policy from Pearson, the company that produced the MMPI survey. This policy provided differing qualification levels for Pearson's products. The policy also provided that "[s]ome tests may be administered or scored by individuals with less training, as long as they are under the supervision of a qualified User." (Exh. A, Vol. III). The trial court qualified Walker as an expert and admitted the psychological examination over Mother's objection that Walker was not qualified to administer the MMPI.

[9] During the hearing, Father's counsel moved the trial court to take judicial notice of records from the CHINS proceedings. Mother's counsel raised objections based on relevancy and the confidentiality of information contained in the proposed exhibits. The trial court admitted the CHINS records as Exhibits 4 through 10. Father testified that he sought to have Child's name changed to his own because he felt that the change would create a stronger bond between him and Child and Child would be more recognizable to others as his daughter. Father also wished to avoid potential embarrassment to Child later in life. Mother opposed the name change because Child knew her full name and for the sake of consistency.

[10] On May 29, 2018, the trial court issued its judgment of paternity and custody order in which it made the following relevant findings and conclusions:

> 2. That as agreed by the parties, [Father] is the biological father of [Child].
>
> * * *

6. That Mother has mental health issues, for which she is presently receiving services.

\* \* \*

17. The Court finds that changing custody is in the best interests of the child, and further finds that there has been a substantial change in one (1) or more of the factors under I.C.[§]31-17-2-8. Specifically, the Court finds as follows:

\* \* \*

(c) Mother's mental health diagnoses demonstrates that she continues to suffer from issues that impair her ability to [effectively] parent [Child].

\* \* \*

20. That [Child's] surname should remain unchanged as that is the name by which she knows herself and there has been no showing of best interests of [Child] to change the same.

(Appellant's App. Vol. II, pp. 9, 11-12). The trial court granted sole physical and legal custody to Father, to be effective upon the CHINS court's approval or the closing of the CHINS proceedings.

Mother now appeals, and Father cross-appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Father's Standing*

[12] Mother contends that Father was not a proper party to the instant paternity action because he was time-barred from filing in his own right[2] and DCS was the only proper party to instigate a paternity action during the pendency of a CHINS proceeding. Mother raised the same issues in her motions to dismiss, which the trial court denied. We review a trial court's grant or denial of a motion to dismiss for lack of standing *de novo*. *Brown v. Vanderburgh Cty. Sheriff's Dep't*, 85 N.E.3d 866, 869 (Ind. Ct. App. 2017); *In re Paternity of R.J.S. v. Stockton*, 886 N.E.2d 611, 614 (Ind. Ct. App. 2008). Inasmuch as the resolution of this issue requires us to engage in statutory interpretation, such an inquiry is a question of law reserved for the courts. *In re Paternity of I.I.P. v. Rodgers*, 92 N.E.3d 1158, 1161 (Ind. Ct. App. 2018). As such, we independently review a statute's meaning and apply it to the facts of the case. *Id*. If a statute is unambiguous, we give the statute its clear and plain meaning. *Id*. The goal of statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes. *Matter of Paternity of J.G.L. v. Lenig*, 107 N.E.3d 1086, 1091 (Ind. Ct. App. 2018).

---

[2] Father does not dispute that he could not have initiated a paternity action in his own right.

Mother's argument rests on her proposed interpretation of the version of Indiana Code section 31-34-15-6 in effect when Father filed his petition, which provided as follows:

> (a) This section applies whenever a child who was born out of wedlock is:
>
> (1) or is alleged to be a child in need of services; and
>
> (2) under the supervision of the department or a local office as a result of a court ordered out-of-home placement.
>
> (b) The department or the local office shall refer a child's case to the local prosecuting attorney's office for the filing of a paternity action if the:
>
> (1) identity of the alleged father is known; and
>
> (2) department or the local office reasonably believes that establishing the paternity of the child would be beneficial to the child.
>
> The local prosecuting attorney's office shall file a paternity action regarding each case that is referred under this subsection. The department shall sign the paternity petition as the child's next friend.

Mother does not argue that the statute was ambiguous. Rather, she contends, based on the language the "department shall sign the paternity petition as the child's next friend" that the CHINS statute vested DCS with exclusive authority to initiate a paternity action during the pendency of a CHINS proceeding and required DCS to file a paternity action unless it determined that it would not be beneficial to the child.

[15] However, Mother's argument is not supported by a plain reading of the statute, which only mandates that DCS or the local office refer a case to the prosecutor for the filing of a paternity action "if" it reasonably believes that establishing paternity would be beneficial to the child. I.C. § 31-34-15-6(b)(2). When construing a statute, "we presume that the words of the statute were selected and employed to express their common and ordinary meaning." *J.G.L.*, 107 N.E.3d at 1091. The legislature did not employ the word "unless" in this portion of the statute; it selected the word "if". As such, nothing in the express, permissive wording of the statute itself compelled DCS to initiate a paternity proceeding or rendered it the exclusive authority to do so during the CHINS proceeding. When construing a statute, we will not read into a statute that which is not the manifest intent of the legislature, and, thus, it is as important to recognize not only what a statute says, but also what it does not say. *In re Paternity of E.M.L.G.*, 863 N.E.2d 867, 868-69 (Ind. Ct. App. 2007). As such, we will not read into the statute Mother's proposed terms or meaning. Here, neither DCS nor the local office made a determination or referral, so, contrary to Mother's contention on appeal, there was no exclusive mandate for DCS to sign a paternity petition as Child's next friend.

[16] In addition, as a general rule, statutes relating to the same general subject matter are in *pari materia* and should be construed together to produce a harmonious statutory scheme. *Clark v. Kenley*, 646 N.E.2d 76, 78 (Ind. Ct. App. 1995), *trans. denied*. Section 31-34-15-6 is part of the CHINS statute. Indiana

Code section 31-14-4-1, which is located in the paternity statute, provided as follows at the time Father filed his petition:

> A paternity action may be filed by the following persons:
>
> (1) The mother or expectant mother.
>
> (2) A man alleging that:
>
> > (A) he is the child's biological father; or
> >
> > (B) he is the expectant father of an unborn child.
>
> (3) The mother and a man alleging that he is her child's biological father, filing jointly.
>
> (4) The expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly.
>
> (5) A child.
>
> (6) If paternity of a child has not been established, the department in a child in need of services proceeding.
>
> (7) If the paternity of a child has not been established:
>
> (A) the department; or
>
> (B) a prosecuting attorney operating under an agreement or contract with the department described in IC[§]31-25-4-13.1.

[17] We note that the language of subsection (6) does not expressly limit to DCS the authority to file a paternity action in a CHINS proceeding. Rather, section 31-14-4-1 of the paternity statute provides a list of categories of persons or entities which "may" file a paternity action. If we were to accept Mother's reading of section 31-34-15-6, it would render at least five of those categories superfluous simply because a CHINS proceeding had been initiated. Mother's proposed

statutory interpretation would also presumably require any ongoing paternity action be dismissed should a CHINS proceeding involving the same child be instigated so that DCS could relitigate the same issues. There is no indication in the wording of the statutes that the legislature intended such a result.

[18] Further undermining Mother's argument is Indiana Code section 31-14-5-2(a), which provides that "[a] person less than eighteen (18) years of age may file a petition if the person is competent except for the person's age. A person who is otherwise incompetent may file a petition through the person's guardian, guardian ad litem, or next friend." This court has interpreted this subsection, formerly codified at Indiana Code section 31-6-6.1-2(a)(4) in the paternity statute, to permit a putative father to file a paternity action as a child's next friend. *Matter of Paternity of P.L.M. v. Mitchell*, 661 N.E.2d 898, 899-900 (Ind. Ct. App. 1996), *trans. denied*. Although this section was recodified in 1997 as section 31-14-5-2(a), its wording did not change, and so we disagree with Mother that the recodification of the statute implied that the General Assembly disapproved of the court's holding in *P.L.M.* Because DCS did not have exclusive standing to initiate a paternity proceeding under the CHINS statute and Father had standing under the paternity statute to do so, we find no error on the part of the trial court in denying Mother's motion to dismiss Father as a party.

## II. *Paternity Determination*

[19] Mother next contends that Father failed to establish paternity, which we take to be a challenge to the evidence supporting the trial court's paternity

determination. The trial court entered findings of fact and conclusions of law establishing paternity in Father. When we review a trial court's findings of fact and conclusions of law, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re Paternity of S.A.M. v. M.H.*, 85 N.E.3d 879, 886 (Ind. Ct. App. 2017). We shall not set aside the findings or a judgment unless it is clearly erroneous. *Id*.

[20] In assessing the sufficiency of the evidence supporting a trial court's paternity determination, we are neither permitted to reweigh the evidence nor to judge the witnesses' credibility. *Humbert v. Smith*, 655 N.E.2d 602, 605 (Ind. Ct. App. 1995), *trans. denied*. Instead, we look to the evidence most favorable to the judgment and the reasonable inferences that follow from that evidence. *Id*. "If the evidence has sufficient probative value to sustain the trial court's judgment, the judgment will not be overturned on appeal." *Id*. In addition, the alleged father must be proved to be such by the preponderance of the evidence. *Id*. Generally, the testimony of a mother regarding an act of sexual intercourse with the putative father, coupled with the probability of conception at such time, is sufficient to support the trial court's determination that he is the father of the child. *Id*.

[21] Here, Child was born in September of 2014. Father was in a relationship and had sexual intercourse with Mother for one-to-two months beginning in either December of 2013 or January of 2014. Mother testified that she had sexual intercourse with Father in a time frame that was consistent with him being the father and that she had not identified anyone else as a potential father. Because

Mother did not identify anyone else as a putative father, the trial court could have reasonably inferred that there was a probability that she conceived Child during the time period she identified as being consistent with Father being the father. This evidence of an act of intercourse coupled with a probability of conception was sufficient to support the trial court's judgment. *Id.*; *see also D.M. v. C.H.*, 177 Ind. App. 600, 602, 380 N.E.2d 1269, 1270 (1978) (evidence that mother had sexual intercourse with father during a period ranging from eleven to seven months before child's birth was sufficient to uphold paternity determination). In addition, Mother, the party presumably contesting paternity, admitted the paternity of Father at the evidentiary hearing in this matter. While we decline Father's invitation to hold that Mother's admissions alone were sufficient to establish paternity, her admissions were evidence which further supported the trial court's paternity determination. *See H.W.K. v. M.A.G.*, 426 N.E.2d 129, 133 (Ind. Ct. App. 1981) (considering putative father's admissions of paternity as part of the evidence supporting the trial court's paternity judgment).

[22] Mother contends that Father did not establish when sexual intercourse took place, did not establish that Child was born "during the normal gestational period," and did not preclude anyone else from being Child's father. (Appellant's Br. pp. 10-11). Mother's arguments ignore her own testimony that she had sexual intercourse with Father at a time consistent with him being the father. In addition, her attempt to direct us to testimony which she contends shows her own equivocation regarding the possibility of other men being the

father is unavailing, as we will consider only the evidence which supports the trial court's paternity judgment. *Humbert,* 655 N.E.2d at 605. Because evidence in the record supports the trial court's paternity determination, it is not clearly erroneous, and we will not reverse. *S.A.M.*, 85 N.E.3d at 886.

### III. *Judicial Notice*

[23] Mother also argues that the trial court improperly took judicial notice of facts contained in documents from the CHINS proceedings. As a threshold matter, we agree with Father that Mother has waived this claim for our consideration because she did not object on that basis at trial. A party may not object on one ground at trial and argue a different basis on appeal. *See Francies v. Francies*, 759 N.E.2d 1106, 1113 (Ind. Ct. App. 2001) (finding issue waived and declining to address it), *trans. denied*. At trial, Mother objected to the admission of the challenged evidence on the basis of relevancy and confidentiality concerns, but she did not object on the basis that the trial court's taking of judicial notice of the records was improper. As such, Mother has waived this issue. *Id*.

[24] However, even if she had not waived the issue, her argument is without merit. Her contention that the trial court took judicial notice of facts, as opposed to records, is not supported by the record on appeal. Father requested that the trial court take judicial notice of certain records from the CHINS proceedings, not that it take judicial notice of any particular fact or set of facts. Indiana Evidence Rule 201(b)(5) provides that a court may take judicial notice of the records of a court of this state. *See In re D.K.*, 968 N.E.2d 792, 796 (Ind. Ct. App. 2012) (upholding the trial court's judicial notice of the records of a related

CHINS proceeding at the outset of a hearing to terminate parental rights). Finding waiver and no trial court error, we do not address Mother's contention that the evidence supporting the trial court's custody determination is insufficient without reliance on the challenged CHINS records.

## IV. *MMPI*

Mother's final argument is that the trial court improperly relied on the MMPI results and Walker's testimony about those results, which she contends were inadmissible. "The admission of evidence is entrusted to the sound discretion of the trial court." *B.H. v. Indiana Dep't of Child Servs.*, 989 N.E.2d 355, 360 (Ind. Ct. App. 2013). An abuse of discretion occurs where the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id*.

Mother contends that the challenged evidence was inadmissible because Walker did not have the necessary credentials to administer the MMPI. Mother bases this argument on the Pearson's qualifications policy she had admitted as Exhibit A which she contended showed that Walker was required to hold a doctorate or certification/membership in a professional organization in order to administer the MMPI. Assuming without deciding that to be true, the same qualifications policy also provided that some products offered by Pearson could be administered without the listed credentials "as long as they are under the supervision of a qualified User." (Exh. A, Vol. III). The policy itself does not exclude the MMPI as one of Pearson's products that may be administered under the supervision of a qualified user, as was done in this case. As such,

Mother did not conclusively establish any deficiency in Walker's qualifications to administer the MMPI, and we find no abuse of the trial court's discretion in admitting the challenged evidence.

[27] However, even if Walker had not been qualified to administer the MMPI and the trial court erred in admitting that MMPI-related evidence, it would not merit reversal. A claim of error based on the admission of evidence must affect a substantial right of the party. *See* Indiana Evidence Rule 103(a). Here, the trial court made only two findings regarding Mother's mental health, neither of which was expressly tied to the MMPI. The MMPI survey was only part of a psychological evaluation that encompassed many other sources of information, including Mother's clinical interview and two other assessment tools that Mother does not challenge on appeal. Indeed, the trial court's reference to Mother's "mental health diagnoses" in its finding 17(c) is more likely based on Walker's assessment that, diagnostically, Mother met the criteria for several clinical disorders. (Appellant's App. Vol. II, p. 12). We cannot conclude that any of Mother's substantial rights were impacted by the admission of the MMPI evidence which we cannot discern was relied upon by the trial court in rendering its custody determination.

# CROSS-APPEAL

[28]  Father argues on cross-appeal that the trial court erred in denying his request to change Child's surname to his own.[3] A trial court's grant or denial of a biological father's request to change the name of a nonmarital child is reviewed for an abuse of discretion. *In re Paternity of N.C.G.*, 994 N.E.2d 331, 334 (Ind. Ct. App. 2013). An abuse of the trial court's discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* The biological father bears the burden of persuading the trial court that the change is in the best interests of the child. *Id.*

[29]  In *C.B. v. B.W.*, 985 N.E.2d 340, 343 (Ind. Ct. App. 2013), *trans. denied*, we noted that when a name change is requested in a paternity proceeding, a trial court may properly consider a number of factors including whether the child holds property under a given name, whether the child is identified in public and private by a certain name, the degree of confusion a name change might cause, the child's desires if the child is of sufficient maturity, and what name appears on records relating to the child. We also concluded that

> like all children, a child born out of wedlock is better served when he knows and is identified with both parents, and both parents are engaged in his upbringing. A child's surname connects the child with the parent. Here, Mother will have physical custody of the child and, as such, the child will continue

---

[3] On November 17, 2018, Mother filed a verified motion for leave to file a belated cross-appellee brief. By separate order, we grant Mother's motion.

to be identified with her and will be connected with her in countless ways, large and small, on a daily basis. Father's surname will connect the child with his non-custodial parent and is a tangible reminder to the child that the child has two parents who care for him, which is in the child's best interests.

*Id*. at 348.

[30] Here, the trial court determined that "[Child's] surname should remain unchanged as that is the name by which she knows herself and there has been no showing of best interests of [Child] to change the same." (Appellant's App. Vol. II, p. 12). This determination was supported by Mother's testimony that Child knew her full name and that Child's retention of her name would promote consistency for Child. By contrast, Father bore the burden to persuade the trial court that it was in Child's best interests to change her name, but he presented little to no evidence bearing on the aforementioned factors or Child's best interests. At trial, Father merely argued that he desired the name change to promote his own bond with Child, to lessen confusion to the public, and to avoid potential embarrassment to Child. However, as we observed in *C.B.*, since Father is the custodial parent, Child will be continually identified with Father and connected to him in a myriad of ways on a daily basis. *Id*. In this case, Child's retention of Mother's surname will be a tangible reminder to Child of Child's connection to Mother.

[31] While we commend Father for his proactivity in taking responsibility for Child and his parenting to date, the trial court, in the exercise of its discretion, considered the totality of the evidence and determined that it was in Child's

best interests to refrain from changing Child's name. Given the evidence before the trial court and Father's burden of persuasion, this determination was neither an abuse of discretion, nor was the trial court's conclusion on the issue clearly erroneous. *S.A.M.*, 85 N.E.3d at 886. As such, we affirm the trial court's denial of Father's request to change Child's name.

## CONCLUSION

[32] Based on the foregoing, we conclude that the trial court did not err when it denied Mother's motion to dismiss Father as a party, the trial court's paternity determination was supported by the evidence, Mother waived her argument regarding the trial court's judicial notice of records from the CHINS proceeding, and the trial court did not abuse its discretion when it admitted evidence pertaining to the MMPI survey. In addition, we conclude on cross-appeal that the trial court did not commit clear error when it denied Father's request to change Child's name.

[33] Affirmed.

[34] Kirsch, J. & Robb, J. concur