**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**JAIMIE L. CAIRNS**
Ruppert & Schaefer, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| C.B., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1206-JP-539 |
| | ) | |
| B.W., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis F. Rosenberg, Judge
The Honorable Sheryl Lynch, Commissioner
Cause No. 49C01-1102-JP-7312

**March 21, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

C.B. ("Mother") appeals the trial court's order granting the request of B.W. ("Father") to change the surname of C.D.B. ("the child") in initial paternity proceedings. Mother presents a single issue for review, namely, whether the trial court abused its discretion when it granted Father's request for the child's surname to be changed to Father's surname.

We affirm.

## FACTS AND PROCEDURAL HISTORY

C.D.B. was born on April 6, 2007. Father and Mother were a couple "on and off for four years." Transcript at 10. On July 23, 2009, the parties became engaged, and they agreed to change the child's surname to Father's when they married. But Mother and Father subsequently separated in December 2009 without having changed the child's name, and, on February 25, 2011, Father filed a petition to establish paternity.

The trial court approved a mediated settlement agreement in the paternity action, establishing paternity and settling custody, visitation, and support issues ("Agreement"). But Mother objected to Father's request to change the child's surname to Father's. On June 21, 2012, the court held an evidentiary hearing on Father's name change request. And on June 25, the court entered its order changing the child's surname to Father's. In sua sponte findings, the trial court found, in part:

> 4. The Court has carefully weighed the evidence regarding both parents['] wishes of the best interest[s] of the child [sic] and related Indiana statutes and case law.
> 5. Father requests the child's surname be changed to his [Father's] last name in this initial paternity action. Mother adamantly objects. This is a finalization of the initial paternity action.

2

6. The Court [notes] that although paternity was established in the mediated settlement agreement [the] parties could not agree on Father's request for name change[,] which was left for the Court to decide. There was no evidence that Father ever agreed to the child's name remaining C[.]D[.]

7. There was no evidence the child holds property under the [Mother's] surname.

8. The [five-year-old] child is identified by public and private entities and community members by a particular surname [Mother's].

9. The child is not of sufficient maturity to consider the child's desires. Although testimony by Mother suggested the child had difficulty learning to write [her last name] in pre-kindergarten, the Court does not find that there is a degree of confusion likely to be occassioned [sic] by a name change given the child's age.

10. The birth records, school records, health records have the child's surname as [Mother's] as this is an initial paternity action where Father did not sign the paternity affidavit. There was no evidence presented that the child has a baptismal record of [Mother's] surname . . . .

11. The Court does not find that the impact of a surname [change] would be significant given the evidence[,] especially since the child has no siblings with Mother currently, and the sibling with Father[1] given the evidence.

12. Mother is getting married August 13, 2012[,] and testifies that she will hyphenate her name if the child keeps [Mother's] surname . . . .

13. Father filed the petition to establish paternity voluntarily and not Mother. Father has actively sought and maintained a relationship with the child. Since at least the court order [establishing paternity] Father has financially supported the child. Mother and Father were together on and off for four (4) [y]ears. In fact, the parties were engaged to be married in 2009. Mother agreed to change the child's surname once the parties were together and married. However, the parties never married.

14. The Court after weighing Father's testimony determines his reasons for the child's surname change was [sic] in the best interest of the child and not for his own interests at this initial paternity decision. The Court also observed Father's demeanor.

15. Father did not have his father's last name and wants the child to have his last name for the child's best interest.

16. The child may be resistant at age five (5) years old to write and learn a new last name but the child is only five (5) years old and has the ability to learn and adjust as he enters kindergarten if he is told to do so despite being what Mother said as a slow learner. Mother presented no evidence that the child was incapable of learning to write and know a change of his surname. It may be difficult, but there was no evidence of the [five-year-old] cannot accomplish [sic] this task.

---

[1] Father had a child with another woman, but that child does not share Father's surname and Father did not petition for a name change.

3

17. Father stated it was in the child's best interest for the child to carry[ ]on [Father's] last name for various reasons.

18. The Court orders that the child's last name be changed to [Father's surname].

Appellant's App. at 6-8. Mother now appeals.

## DISCUSSION AND DECISION

The standard of review in juvenile name change cases is well-settled. A biological father seeking to obtain a name change of his nonmarital child bears the burden of persuading the trial court that the change is in the child's best interests. Petersen v. Burton, 871 N.E.2d 1025, 1029 (Ind. Ct. App. 2007). Absent evidence of the child's best interests, the father is not entitled to obtain a name change. J.T. v. S.W. (In re Paternity of Tibbitts), 668 N.E.2d 1266, 1267-68 (Ind. Ct. App. 1996), trans. denied. We review the trial court's order in such cases under an abuse of discretion standard. In re Paternity of M.O.B., 627 N.E.2d 1317, 1318 (Ind. Ct. App. 1994) (citation omitted). A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. Peterson, 871 N.E. 2d at 1028.

When a surname change is sought in a paternity action, among other factors the trial court may properly consider whether the child holds property under a given name, whether the child is identified by public and private entities and community members by a particular name, the degree of confusion likely to be occasioned by a name change, and (if the child is of sufficient maturity) the child's desires. Tibbitts v. Warren, 668 N.E.2d 1266, 1268 (Ind. Ct. App. 1996) (citation omitted). Additional factors which have been considered are the birth and baptismal records of the child, the school records of any

4

older children, health records, and the impact of a name change when there are siblings involved whose name(s) would not be changed.  Id. (citation omitted).

Here, the trial court entered findings of fact pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous.  Ind. Trial R. 52(A); Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000).  In our review, we first consider whether the evidence supports the factual findings.  Menard, 726 N.E.2d at 1210.  Second, we consider whether the findings support the judgment.  Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference."  Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996).  A judgment is clearly erroneous if it relies on an incorrect legal standard.  Menard, 726 N.E.2d at 1210.  We give due regard to the trial court's ability to assess the credibility of witnesses.  Ind. Trial R. 52(A).  While we defer substantially to findings of fact, we do not do so to conclusions of law.  Menard, 726 N.E.2d at 1210.  We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment.  Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

Further, in this case the trial court entered special findings sua sponte.  When a trial court makes specific findings upon its own motion, the general judgment will control as to the issues upon which the court has not found and specific findings control only as to the issues they cover.  In re Marriage of Snemis, 575 N.E.2d 650 (Ind. Ct. App. 1991). Thus, it may not be necessary that each and every special finding be correct, and even where one or more special findings are clearly erroneous, the judgment may be affirmed

5

if the judgment is supported by other findings or is otherwise supported by the record. Where, as here, special findings are entered sua sponte, the general judgment will be affirmed if it can be sustained upon any legal theory by the evidence introduced at trial. Id. While special findings entered sua sponte control as to the issues upon which the court has found, they do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court. Id.

We note that Father did not file an appellee's brief. When an appellee does not submit a brief, an appellant may prevail by establishing a prima facie case of error, i.e., error at first sight, on first appearance, or on the face of it. Carlisle Libbert v. Van Winkle (In re J.C.), 819 N.E.2d 525, 527 (Ind. Ct. App. 2004) (citation omitted). By requiring the appellant to show some error, we ensure that the court, not the parties, decides the law. Pala v. Loubser, 943 N.E.2d 400, 407 (Ind. Ct. App. 2011), trans. denied. By allowing the appellant to prevail upon a showing of only prima facie error, we avoid the improper burden of having to act as advocate for the absent appellee. Id.

Here, Mother contends that the trial court abused its discretion when it granted Father's request to change the child's surname over her objection. In particular, Mother asserts that the trial court's findings are not supported by the evidence and that the trial court's findings contain several clearly erroneous statements and, hence, that Father failed to meet his burden to show that the name change is in the best interests of the child.

Mother contends that the evidence does not support the following findings: (1) that there will not be "a degree of confusion likely to be occasioned by a name change

given the child's age[;]" (2) that the impact of a surname change would not be significant given the child's age, especially since the child has no siblings with Mother currently; (3) that Father's reason for the surname change is not for Father's own interests; (4) that "Father has actively sought and maintained a relationship. Since at least the Court order [establishing child support] Father has financially supported the child[;]" and (5) that "[t]he child may be resistant at age five (5) years old to write and learn a new last name but the child is only five years old and has the ability to learn and adjust as he enters kindergarten if he is told to do so." Appellant's Brief at 9-11. Mother contends that these findings are clearly erroneous and, therefore, do not support the trial court's conclusion that the name change is in the child's best interests.

Mother's argument with regard to these findings amounts to a request that we reweigh the evidence, which we cannot do. Yoon, 711 N.E.2d at 1268. For example, Mother challenges the finding that "[t]he court does not find that the impact of a surname change would be significant given the evidence." Appellant's App. at 7, 12. But, as Mother also notes correctly, that finding is qualified by the following language: "Especially since the child has no siblings with Mother currently, and the sibling with Father given the evidence." Id. at 7, 12. The finding is supported by evidence that Mother has no other children at this time and that Father's other child does not bear his surname. Thus, changing C.D.B.'s surname would neither alienate him from nor connect him with another sibling.

Mother also points to Father's shortcomings when she challenges the finding that "Father has actively sought and maintained a relationship with the child" as well as his

support for the child. Appellant's App. at 7, 12. But a father's performance with respect to parent-child involvement and financial support need not be perfect in order to be credited in a name change proceeding. See Peterson v. Burton, 871 N.E.2d 1025, 1029-30 (Ind. Ct. App. 2007) (affirming father's name change request where, in part, "Father's 'performance,' while not flawless, does demonstrate a genuine desire to form a parent-child relationship" with the child). Thus, Mother's challenge to this finding also asks us to reweigh the evidence.

We do question the significance of another finding, that Mother and Father were once engaged and Mother had "agreed to change the child's surname once the parties were together and married." That fact, even if proven, cannot be used to support the name change. Prior agreement of parents regarding the name of their minor child is not a proper basis upon which a trial court should determine whether a child's surname should be changed. See In re J.C., 819 N.E.2d at 528. Thus, to the extent the trial court based its best interests determination on the parties' prior agreement, the court abused its discretion.

Nevertheless, and we emphasize, it is not necessary that every finding support the trial court's conclusion. In this case and on this record we need not parse each of the challenged or other findings. Assuming for the sake of argument that Mother is correct, that there is no evidence in the record to support the challenged findings, that would not necessarily establish reversible error. As discussed below, numerous other findings and facts in the record remain intact to support the trial court's determination, whether directly or by inference, that the name change is in the child's best interests.

In addition to her objections to specific findings, Mother broadly contends that Father did not present "any evidence" as to why the name change was in the child's best interest and that "Father did not testify why [the child] would benefit from the name change." Brief of Appellant at 8. But in determining the best interests of the child, the trial court is not limited to consideration of Father's testimony. The court may, and should, consider any relevant and probative facts and circumstances before the court, and may draw reasonable inferences from those facts and circumstances. Indeed, our abuse of discretion standard of review is not confined to testimony but includes consideration of the facts and circumstances before the court as well as "the reasonable, probable and actual deductions to be drawn therefrom." D.R.S. v. R.S.H., 412 N.E.2d 1257, 1266 (Ind. Ct. App. 1980).

Mother relies on In re Paternity of M.O.B. as "very similar" to the instant case. In M.O.B. the evidence showed that the child was known by his birth name in his family and community, that he owned property and had a Social Security card in his name, that a doctor testified that the name change would not be in the child's best interests, and that the father believed his last name was an honorable name that he wanted "carried on." 627 N.E.2d at 1319. We reversed the trial court's order granting the father's name change request, holding that this evidence did not show that the name change was in the child's best interests. Id. Mother also relies on Garrison v. Knauss, 637 N.E.2d 160 (Ind. Ct. App. 1994). In that case, we again reversed the trial court's grant of father's request to change the last name of his children, reasoning that "[t]he only evidence Knauss presented in relation to the best interests of the children was his statement that it was in

the children's best interests for—just for—that paternal feeling that they are my children." Id. at 161. In both M.O.B. and Garrison, the father testified as to personal reasons for requesting the child's name change, either to carry on the father's name or to create or enhance the father's paternal feelings.

However, in Tibbitts, on similar evidence, we affirmed the father's request to change his child's surname. There we stated that the issue was "whether it is sufficiently in the best interest of the child to give the child its father's surname when the father pays support, has visitation, and is actively involved in the child's life." 668 N.E.2d at 1268. In Tibbitts the child was known in the community and in private by the mother's name and all records were in the mother's name, but the father wanted the child to bear his surname "because he pays child support, has visitation, and is involved in the child's life." Id. Further, the evidence showed that the father was a Potowami Indian and "claim[ed] that the child having his last name is relevant to the child's Indian heritage." Id. On those facts, we concluded that the father was entitled to have the child bear his surname. Id. Likewise, on similar facts, in Peterson we applied the "same reasoning" as in Tibbitts and affirmed.[2] 871 N.E.2d at 1029.

These cases, M.O.B. and Garrison on the one hand, and Tibbitts and Peterson on the other hand, show a split of authority on this court as to whether a father's financial support for, visitation and involvement with the child is sufficient evidence to demonstrate that changing the child's surname to his father's name is in the best interests of the child. In M.O.B. and Garrison, we reversed, and in Tibbitts and Peterson we

_____

[2] Peterson also has the additional factor that the father wanted his child to know him as more than just a friend of the family.

10

affirmed, a father's petition to change the surname of his child or children born out of wedlock. These four cases illustrate that whether it is in the best interests for a child born out of wedlock to be given the father's surname when paternity has been established is an issue to be resolved on a case-by-case basis. Tibbitts, 668 N.E.2d at 1269.

Here, it was Father who filed a petition to establish paternity. Father and Mother then negotiated a mediated settlement agreement in which the parties agreed to share joint legal custody of the child and resolved visitation and support issues. And the trial court found that "Father has actively sought and maintained a relationship with the child. Since at least the court order [establishing paternity] Father has financially supported the child." Appellant's App. at 7, 12. As we have already noted, while Mother disputes that finding, in so doing she asks us to reweigh the evidence. As noted above, a father's performance with respect to parent-child involvement and financial support need not be perfect in order to be credited in a name change proceeding. Peterson, 871 N.E.2d at 1029.

We acknowledge, as we did in Peterson (when interpreting application of a statute not here relevant), that there has been a change in modern attitudes and practices regarding the surnames of children born out of wedlock. Id. at 1028. Thus, we do not suggest, as was stated in D.R.S., that significant consideration is given to the father's interest in having his child bear the paternal surname "in accordance with tradition," 412 N.E.2d at 1263, nor do we suggest, as was also stated in D.R.S., that "a father who exercises his paternal rights has a protectable interest in his children bearing his surname

11

and this interest is one quid pro quo of his reciprocal obligation of support and maintenance. 412 N.E.2d at 1265.

These statements from D.R.S. were quoted in Tibbitts, but the opinion in D.R.S. was the opinion of one judge, with one judge concurring in result and another dissenting. The opinion of a single judge is not an opinion of the Court of Appeals. Key v. State, 651 N.E.2d 1190, 1192 n.1 (Ind. Ct. App. 1994). And it is clear that the Tibbitts court did not adopt the "protectable interest" or "quid pro quo" rationale for deciding when the father of a child born out of wedlock is entitled to have the child bear his surname. Rather, again, just as here, the question presented in Tibbitts was "whether it is sufficiently in the best interest of the child to give the child its father's surname when the father pays support, has visitation, and is actively involved in the child's life." 668 N.E. at 1268. We agree with the Tibbitts court that this is conduct that society wants to encourage of men who father children born out of wedlock. 668 N.E.2d at 1269. Still, while these factors are relevant, material, and probative, their presence, without more, may not always result in a best interests determination for the name change petitioner.

In this case there is an additional factor apparently not present in either Tibbitts or Peterson, namely, that Father shares joint legal custody of the child, which is further evidence of his commitment to participate regularly and directly in the child's upbringing. See Ind. Code § 31-9-2-67 ("joint legal custody" means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training). Thus, in sum, Father initiated proceedings to establish his paternity,

12

pays support, exercises visitation, participates in the life of the child and shares joint legal custody of the child with Mother, all of which are indicators of Father's desire to maintain a parent-child relationship and evidence that Father's request to change the child's surname is in the child's best interests. See Tibbitts, 668 N.E.2d at 1269; Peterson, 871 N.E.2d at 1029.

And, finally, the court stated that it had "also observed Father's demeanor." Appellant's App. at 7, 13. Demeanor is a component of credibility, and demeanor evidence is not reviewable on appeal. Wampler v. Review Bd. of Ind. Emp. Sec. Div., 498 N.E.2d 998, 999 (Ind. Ct. App. 1986) (demeanor remains outside the reviewing authority's abilities to assess); see Jones v. State, 847 N.E.2d 190, 200 (Ind. Ct. App. 2006) (under abuse of discretion standard, appellate courts will not determine credibility), trans. denied. Demeanor evidence may be a significant factor in the trial court's evaluation of Father's sincerity and commitment to the child which, in turn, is a factor to be considered in a best interests determination.

We conclude that, like all children, a child born out of wedlock is better served when he knows and is identified with both parents, and both parents are engaged in his upbringing. A child's surname connects the child with the parent. Here, Mother will have physical custody of the child and, as such, the child will continue to be identified with her and will be connected with her in countless ways, large and small, on a daily basis. Father's surname will connect the child with his non-custodial parent and is a tangible reminder to the child that the child has two parents who care for him, which is in the child's best interests.

We conclude that the trial court's decision is not clearly against the logic and effect of the facts and circumstances before the court or contrary to law. Mother has not shown reversible error. The evidence, taken as a whole, supports the conclusion that it is in the child's best interests to share his father's surname. Our opinion supports the general principle that it is in the best interests of children born out of wedlock for their fathers not only to provide financial support but also to actively and visibly identify themselves as parents and to participate in their children's upbringing.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.