# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**THOMAS C. ALLEN**
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**SARA L. SEIBERT**
Eberhard & Weimer, P.C.
Angola, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE PATERNITY OF: | ) | |
| N.C.G. | ) | |
| | ) | |
| B.G., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1301-JP-21 |
| | ) | |
| N.G., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

### APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Eve S. Scott, Judge Pro Tem
Cause No. 02D07-1006-JP-381

**September 19, 2013**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

In the instant case, after appellant-respondent B.G. (Father) established paternity over his son, he and appellee-petitioner N.G. (Mother), through mediation, agreed on almost every issue except N.C.G.'s surname, which was fervently contested. The issue of N.C.G.'s surname was deferred until Father filed a verified petition to change his name. After a hearing on the petition, the trial court entered findings of fact, essentially determining that the parents were in equipoise but denying Father's petition because the child had been known by Mother's surname for about two and one-half years, which was the approximate time that the issue had been under some form of mediation between the contentious parties.

An examination of our evolving caselaw indicates that so long as a father pays child support, exercises parenting time, and actively participates in the child's life, then the best interests of the child may be served by giving the child the father's surname to reinforce the bond between father and his nonmarital child, particularly if father is the noncustodial parent. Because Father has paid child support, exercised parenting time, actively participated in N.C.G's life, and demonstrated that he wants his son to have his name to solidify the bond that Father has with his noncustodial son, we reverse the judgment of the trial court.

## FACTS

N.C.G. was born on May 13, 2010. At the time of N.C.G.'s birth, he was given Mother's surname. On August 3, 2010, the trial court issued an order establishing Father's paternity. In the order, Mother was granted sole legal custody and primary

2

physical custody of N.C.G., and Father was ordered to pay $155 per week in child support. Father was granted visitation to be supervised by a third party. Father and Mother were ordered to attend mediation for all other issues.

On September 23, 2010, Mother and Father attended mediation and submitted a proposed agreement to the trial court. This agreement was made an order of the trial court on October 27, 2010. Under the agreement, Mother retained sole legal custody of N.C.G. and Father was granted parenting time pursuant to the Indiana Parenting Guidelines with the following limitations:

(a) Father shall immediately enroll in a parenting class for infant care. Upon completion, he shall provide the Court and Mother with a copy of his certificate of completion.

(b) Father shall insure he has the items needed for an infant including, but not limited to, a crib, mattress, car seat, toys, and high chair. Father shall provide Mother with a picture of said items within 10 days of the date of this agreement.

(c) Until such time as Father completes his parenting class, his parenting time shall be each Monday and Wednesday from 5:30 p.m. to 8:30 p.m. at the home of Mother which shall be supervised by the maternal grandmother . . . and each Sunday from 5:00 p.m. to 8:00 p.m. The Sunday parenting time shall not be supervised and will take place outside Mother's home. Father's parenting time shall not be supervised after he completes his parenting class.

(d) The above schedule will continue until the child is one (1) year old. At one (1) year Father shall have one (1) overnight per week on one of his scheduled days.

Appellant's App. p. 14.

3

Father's child support was modified to $120 per week effective September 24, 2010, and he was ordered to provide health insurance for the child. Father was also ordered to pay 61% of the uninsured medical expenses. The determination of N.C.G.'s surname was deferred.

On May 29, 2012, Father filed his verified petition for change of name of minor child. On September 17, 2012, Mother filed a verified petition for contempt for nonpayment of uninsured medical expenses.

On December 14, 2012, the trial court held a hearing on Father's petition for change of name. At the beginning of the hearing, Father was served in open court with Mother's petition for contempt along with copies of medical bills allegedly owed by Father. A hearing on Mother's petition was scheduled for February 11, 2012.

During the hearing, Father testified that he had been paying child support and visiting with N.C.G. Tr. p. 8. Additionally, Father stated that he wanted N.C.G. to have his surname because it would "help cement in [N.C.G's] mind who his biological father is." Id.

Mother testified that because she had "full and physical custody," of the child, she thought that the child's surname should remain the same. Id. The trial court then asked if N.C.G.'s name was the name that he was given in the hospital, to which Mother replied that it was. Father explained that there were questions surrounding the child's paternity and that he had been waiting on the results of a DNA test before establishing paternity. Id. at 9.

Further, Father explained that he had been trying to work with Mother for the past two years to get N.C.G.'s name changed but that the relationship was very contentious. Instead of refuting this claim, Mother immediately tried to negate Father's attempt to establish that he is involved in the child's life. She pointed out that Father had gotten married and had not requested the child's presence at the wedding.

After hearing testimony from Mother and Father, the trial court observed that

> I totally understand the father's position regarding wanting his first-born son to carry his name. However, I think in light of the fact that I need to look at it for what's best for the child, not what's best for you or the mother, and since the child is 2 and a half years old and has gone by the name [N.C.G.], I think I'm going to deny, I'm going to deny the Petition for Change of Name and leave his name as [N.C.G.]

Tr. p. 12.

In the trial court's written order, it made the following findings:

> C. The Court finds that the minor child is Father's first-born and only son.
> D. The Court finds that Father has been paying child support since 2010.
> E. The Court finds that Father has exercised regular parenting time with the minor child.
> F. The Court finds that the minor child is two (2) years of age and is Mother's first born and her only son.
> G. The Court finds that Mother is not in agreement that the minor child's surname be changed.

Appellant's App. p. 11.

As in open court, the trial court denied Father's petition in the written order.

Father now appeals.

Father's sole argument on appeal is that although "the court's findings of fact were adequately supported by evidence[,] . . . the conclusions derived from the findings of fact are clearly erroneous" such that the trial court erred by not changing N.C.G.'s name. Appellant's Br. p. 6. We review a trial court's order granting or denying a biological father's request to change the name of a nonmarital child for an abuse of discretion. In re Paternity of M.O.B., 627 N.E.2d 1317, 1318 (Ind. Ct. App. 1994). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court. In re Paternity of Tibbitts, 668 N.E.2d 1266, 1268 (Ind. Ct. App. 1997). Additionally, a biological father seeking to change the name of a non-marital child has the burden of persuading the court that the change is in the best interests of the child. M.O.B., 627 N.E.2d at 1318.

Here, the trial court entered findings of fact pursuant to Trial Rule 52(A), which we may not set aside unless they are clearly erroneous. Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000). Findings of fact are clearly erroneous when the record contains no evidence to support them directly or indirectly. Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous when the findings of fact do not support the conclusions of law or the conclusions of law do not support the judgment. Id.

Indiana Code section 16-37-2-13 provides, in relevant part, that "[a] child born out of wedlock shall be recorded . . . under the name of the mother." Nevertheless, "a

6

biological father seeking to obtain [a] name change of his non-marital child bears the burden of persuading the court that the change is in the child's best interests. Absent evidence of the child's best interests, the father is not entitled to obtain a name change." MOB, 627 N.E.2d at 1318.

In M.O.B., paternity was established when the child was about five months old, but a hearing was not scheduled until one year later on the contested issue of the child's surname. 627 N.E.2d at 1318. The mother presented evidence that United States Savings Bonds, health insurance coverage, and a social security card had all been obtained under her surname. Id. at 1319. The mother also stated that the child was identified in the community, by his family, and by certain organizations by her surname. Id. Finally, the mother asserted that she would be the parent to enroll him in school and obtain medical treatment on his behalf and a written recommendation from a doctor stated that the child should retain the mother's surname. Id.

The father, on the other hand, testified that the child was his only son and that his surname was an honorable one that he truly wanted to have carried on. Id. On appeal, a panel of this Court concluded:

> Father clearly failed to sustain his burden of persuasion that a name change was in the best interests of M.O.B. Therefore, the trial court abused its discretion as a matter of law when it erroneously ordered that M.O.B. assume Father's surname.

Id. at 1319. Thus, the M.O.B. Panel reversed the trial court's order changing the child's name to Father's surname. Id.

7

In what appears to be an effort to encourage a paternal connection with a father's nonmarital and noncustodial child, recent cases have concluded that it is in the child's best interest to give the child the father's surname when certain indicators are present such as the father pays child support, exercises parenting time, and participates in the child's life. See C.B. v. B.W., 985 N.E.2d 340, 348 (Ind. Ct. App. 2013) (stating that "Father's surname will connect the child with his non-custodial parent and is a tangible reminder to the child that the child has two parents who care for him, which is in the child's best interests"); see also Petersen v Burton, 871 N.E.2d 1025, 1029 (Ind. Ct. App. 2007) (opining that "the indicators that complying with Father's request [for a name change] is in the child's best interest are that he does pay support, has visitation and participates in the life of his child").

This Court has noted that this is conduct that society wants to encourage. Peterson, 871 N.E.2d at 1029. More particularly, The Petersen Panel reasoned that as applied to that case, the father's testimony reflected his belief that his son would feel a greater connection to him as his father by sharing his name. Id. at 1031. Thus, the panel affirmed the trial court's decision to change the child's surname to that of the father. Id.

In the instant case, even though N.C.G. was given Mother's name at the hospital, Father explained that he had been trying to effect a name change almost since the child's birth. Tr. p. 11. Likewise, although the trial court reasoned that N.C.G. had been using his mother's surname for over two years, it also recognized that the issue of the child's surname had to be taken through a lengthy mediation process. Tr. p. 7. These facts

8

highlight the contentious relationship between Father and Mother rather than the best interests of the child.

Furthermore, Father testified that giving N.C.G. his surname would cement the parental bond between himself, as the noncustodial parent, and the child. Tr. p. 8. This is unlike the father in M.O.B. who merely wanted to change his child's surname because it was an honorable one that he wanted to pass on. 627 N.E.2d at 1319. The distinction is that the latter has nothing to do with the child's best interest, but rather, concerns only the father's interest. Id.

Similarly, as observed in C.B., having a father's surname under circumstances such as those presented in the instant case is in a child's best interest because it is a tangible reminder that the child has two parents. 985 N.E.2d at 348. This is particularly true when the father is the noncustodial parent. Id. Accordingly, we conclude that the trial court erred by not granting Father's petition to change N.C.G.'s surname. Thus, we reverse the trial court's order and remand with instructions to the trial court to enter an order changing N.C.G's surname to Father's surname.

The judgment of the trial court is reversed.

FRIEDLANDER, J., and VAIDIK, J., concur.