## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 18 2015, 9:27 am

*Kevin S. Smith*

**CLERK**
of the supreme court, court of appeals and tax court

---

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE

Mark J. Roberts
Darren A. Craig
Abigail T. Rom
Frost Brown Todd LLC
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

In re the Paternity of J.A.S.:

H.S.,

*Appellant-Respondent,*

v.

N.L.,

*Appellee-Petitioner.*

May 18, 2015

Court of Appeals Case No.
49A05-1407-JP-345

Appeal from the Marion Circuit Court

The Honorable Louis F. Rosenberg, Judge

The Honorable Sheryl L. Lynch, Master Commissioner

Cause No. 49C01-1112-JP-49079

**Brown, Judge.**

[1] H.S. ("Mother") appeals the trial court's final order dated June 25, 2014. Mother raises two issues, which we revise and restate as whether the court abused its discretion in granting the request of N.L. ("Father") to change the last name of J. ("Child") to Father's last name and in not entering a child support arrearage. We affirm.

## Facts and Procedural History

[2] Child was born in November 2011. On December 30, 2011, Father filed a Verified Petition to Establish Paternity, Parenting Time, Child Support and Related Matters, and for an Order for Paternity Testing. In the petition, Father requested the court to order the parties to cooperate in paternity testing for Child, award him reasonable parenting time, order him to pay Mother a reasonable amount of child support, and order that Child's last name be changed from Mother's last name ("Maternal Name") to Father's last name ("Paternal Name").

[3] On March 12, 2012, following a hearing, the court ordered the parties to complete DNA testing, and a subsequent a DNA test established that Father was Child's biological father. Following a hearing on August 15, 2012, the court entered its Preliminary Agreed Order of August 15, 2012 Hearing,[1] providing that Mother have primary physical custody of Child, that Father have parenting time as set by the court, and that Father pay child support to Mother

---

[1] The order was noted on the chronological case summary on September 24, 2012.

of $246 per week until he begins overnight parenting time. The order stated that the issue of the last name of Child and all other issues would be heard at the final hearing.

[4] The court held evidentiary hearings on March 14, 2013, January 9, 2014, and March 25, 2014, at which the parties presented evidence and arguments regarding the issues of Child's last name, parenting time, and child support. At the March 14, 2013 hearing, Father testified that, prior to the birth of Child, he and Mother had agreed that Child's last name would be Paternal Name, but that, after the birth of the Child, Mother would not sign an affidavit verifying he was Child's father or that the last name of Child would be Paternal Name. He indicated that an arrearage accumulated prior to the preliminary hearing, and when asked if he knew the amount of the arrearage, he testified "[t]he better; just over seven thousand dollars, I believe." Transcript at 45. Father then indicated that he understood he had to work on the reduction of the arrearage and that he was willing to pay an additional twenty dollars per week toward the reduction of the arrearage.

[5] At the January 9, 2014 hearing, when asked why his requested name change was in the best interest of Child, Father testified that "it is special to [him] that [his] father's name is in his kids['] and grandkids['] names" and that he did not think Child "should be excluded from that," that it was special to his family as well, that he did not "want to have that conversation with [Child] when he is older, or when he brings it up about why he doesn't have [Father's] last name as a male," and that he believed "it would help [Child] connect with his siblings

because they do bear the last name of [Paternal Name]." *Id.* at 262. He testified that he, his brother, his dad, and his grandparent all have Child's first name and Paternal Name and that "it is special to us to have that name within our name, and I did not want [Child] to be excluded from that . . . ." *Id.* at 273-274. The court asked "[s]o then everybody has the [Child's first name] and the [Paternal Name] in their name," and Father testified "[r]ight, so that it was not only special to me but special to other family members, and to [Child] himself." *Id.* at 274.

[6]     Mother testified that Child's last name on his birth certificate is Maternal Name, that Child had been raised with Maternal Name and had started to say his name using his Maternal Name, and that she "had him baptized when he was two months old as [having the Maternal Name] and the Catholic belief is once you are baptized with a name, you cannot be re-baptized." *Id.* at 277. Mother testified that she had heard Father and his family refer to Child using Paternal Name numerous times and that mail from Father's family referred to Paternal Name. When asked why she believed it was in Child's best interest to continue to maintain the name of Maternal Name, Mother testified that Child had been baptized and raised with Maternal Name, that he would be starting school in two to three years, that all his cousins know him with the name of Maternal Name, and that her last name "and her brother's is the only [Maternal Name], but it is no different than any other child out there that have separated parents." *Id.* at 282. When asked if she believed that, as long as she was the custodial parent, Child ought to bear the last name of his mother, Mother

testified affirmatively and that "[i]t would be easier for medical purposes, and when he gets signed up for schooling and things like that." *Id.*

On June 25, 2014, the court entered a final order addressing Child's last name, parenting time, and child support. The court ordered that Mother and Father have joint legal custody, that Father pay $177 per week for current child support, and that Father have certain parenting time as set forth in the order. With respect to the issue of arrearage, the court stated in Paragraph 48: "Mother did not present evidence of Father having retro-active child support arrears. It is the Court's determination that Mother accepted all the gifts on Father's behalf to settle any retro-active child support arrears." Appellant's Appendix at 27. With respect to Child's name, the order provided:

> 55. The Court has carefully considered the evidence presented, and related Indiana case law and the demeanors of Mother and Father as well as their credibility. In addition, the Court has carefully considered the best interest of the child for a surname change.
>
> 56. Father was present at the hospital when the child was born. Father wanted to sign the paternity affidavit but he was unsuccessful at getting Mother's permission.
>
> 57. Father testified that the [Paternal Name] surname has a family history.
>
> 58. The child has been baptized in the Catholic faith with the surname of [Maternal Name] at two (2) months old.
>
> 59. Father asserts it is in the best interest for the child to have his surname, because this child should not be excluded from the family heritage of the surname of [Paternal Name] that was demonstrated through the overall testimony. Father further asserted that it is special for all relatives of the [Paternal Name] family heritage to have the name [Child's first name] and [Paternal Name]. Father does not want to have the conversation later to the child why he does not have his

Father's surname like other boys of his age. All relatives in Father's family have a part of their life heritage to have the [Paternal Name] surname.

60. Father feels it is important for his son to not be confused with other kids that have their Father's surname.

61. Father further testified that the child having his surname would help connect him with his half sibling on Father's side.

62. The child at this time does not have any siblings on Mother's side of the family with the surname "[Maternal Name]." The child has a younger biological sibling with Father that has the surname of [Paternal Name].

63. Father has met his burden in the best interest of the child to carry his surname of [Paternal Name].

64. The Court notes that the child is currently two (2) years old and almost three (3) at the time of this order. There was no evidence presented that the child could not learn his new surname of "[Paternal Name]." Notwithstanding this was not a burden for Mother to present to the Court.

*Id.* at 28-29. The court granted Father's request that Child's last name be changed to Paternal Name.

## *Discussion*

[8] The issue is whether the trial court abused its discretion in granting Father's request to change the last name of Child to Paternal Name and in not entering a child support arrearage. With respect to the court's ruling as to Child's name, Mother asserts that the court relied upon improper factors in granting Father's name change request. She argues that family heritage is not an appropriate factor and is irrelevant to the best interest of Child, that the assumption that other children the age of Child will all have their fathers' surnames is not enumerated as one of the factors considered by this Court, and this is likely

because the assumption does not hold true, and that the strength of a relationship between siblings has nothing to do with whether they share the same last name. Mother also argues that, given that Child was baptized in the Catholic faith under the Maternal Name and cannot be re-baptized, that Child has started saying his name using Maternal Name, and that Mother carries health insurance on Child and the medical records are all under the name of Maternal Name, the court erred in granting Father's request to change Child's name.

[9]     Father maintains that the court's findings and order are supported by evidence that his requested name change is in the best interest of Child. He notes that he presented evidence that the Paternal Name will connect Child to his family heritage and half-sibling and is special to the father-son relationship, that he asserted paternity and first sought a name change approximately one month after Child was born, and that he has exercised parenting time, paid child support, and has joint legal custody. Father argues that Mother asks this court to reweigh the evidence and that he has shown that having the surname of Paternal Name will connect Child, not only to his noncustodial parent, but to his family heritage and half-sibling that bears the surname.

[10]    We review a trial court's order granting or denying a biological father's request to change the name of a nonmarital child for an abuse of discretion. *In re Paternity of N.C.G.*, 994 N.E.2d 331, 334 (Ind. Ct. App. 2013). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* The trial court here entered

findings of fact, and we may not set aside the trial court's findings of fact unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record contains no evidence to support them directly or indirectly. *Id.* at 334-335. A judgment is clearly erroneous when the findings of fact do not support the conclusions of law or the conclusions of law do not support the judgment. *Id.* at 335.

[11] "A child born out of wedlock shall be recorded . . . under the name of the mother . . . ." Ind. Code § 16-37-2-13. "Nevertheless, a biological father seeking to obtain a name change of his non-marital child bears the burden of persuading the court that the change is in the child's best interests. Absent evidence of the child's best interests, the father is not entitled to obtain a name change." *In re Paternity of N.C.G.*, 994 N.E.2d at 335 (internal quotation marks, brackets and citation omitted).

[12] In *In re Paternity of N.C.G.*, this court stated:

> In what appears to be an effort to encourage a paternal connection with a father's nonmarital and noncustodial child, recent cases have concluded that it is in the child's best interest to give the child the father's surname when certain indicators are present such as the father pays child support, exercises parenting time, and participates in the child's life. *See C.B. v. B.W.*, 985 N.E.2d 340, 348 (Ind. Ct. App. 2013) (stating that "Father's surname will connect the child with his non-custodial parent and is a tangible reminder to the child that the child has two parents who care for him, which is in the child's best interests")[, *trans. denied*]; *see also Petersen v. Burton*, 871 N.E.2d 1025, 1029 (Ind. Ct. App. 2007) (opining that "the indicators that complying with Father's request [for a name change] is in the child's best interest are that he does pay support, has visitation and participates in the life of his child").

*Id.* We further indicated that, as observed in *C.B. v. B.W.*, having a father's surname under certain circumstances may be in a child's best interest because it is a tangible reminder that the child has two parents and that this is particularly true when the father is the noncustodial parent. *Id.* at 336 (citing *C.B. v. B.W.*, 985 N.E.2d 340, 348 (Ind. Ct. App. 2013), *trans. denied*).

[13] In *C.B.*, this court observed that, when a surname change is sought in a paternity action, among other factors the trial court may properly consider are whether the child holds property under a given name, whether the child is identified by public and private entities and community members by a particular name, the degree of confusion likely to be occasioned by a name change, the child's desires if the child is of sufficient maturity, the birth and baptismal records of the child, the school records of older children, health records, and the impact of a name change when there are siblings involved whose names would not be changed. *C.B.*, 985 N.E.2d at 343. We concluded that, "like all children, a child born out of wedlock is better served when he knows and is identified with both parents, and both parents are engaged in his upbringing" and that "[a] child's surname connects the child with the parent." *Id.* at 348. We held in that case that the mother would "have physical custody of the child and, as such, the child will continue to be identified with her and will be connected with her in countless ways, large and small, on a daily basis" and that the father's "surname will connect the child with his non-custodial parent and is a tangible reminder to the child that the child has two parents who care for him, which is in the child's best interests." *Id.*

[14]     The record reveals that, while Child was baptized as having the last name of Maternal Name at two months of age, Father filed his petition seeking to establish paternity approximately one month after the birth of Child and asked the court to award him reasonable parenting time and order him to pay Mother a reasonable amount of child support, and the court subsequently granted Father visitation and ordered him to pay support in its September 2012 preliminary order. Father testified that Child's first name and Paternal Name were a part of his own name as well as the names of his brother, his father, and his grandparent. The court also noted that Child at this time does not have any siblings on Mother's side of the family with the Maternal Name and that the Child has a younger biological sibling with Father who has Paternal Name. In addition, Father shares joint legal custody of Child, and Mother has primary physical custody.

[15]     In the exercise of its discretion, the trial court considered the totality of the circumstances in determining what was in Child's long-term best interest. Based upon the factors discussed above and upon the evidence in the record, we cannot say the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Accordingly, the court did not abuse its discretion in granting Father's request for a name change for Child. *See In re Paternity of N.C.G.*, 994 N.E.2d at 334-336 (noting that the father explained that he had been trying to effect a name change almost since the child's birth and that the trial court had found that the father had been paying child support and exercised regular parenting time, and holding that the father's petition to

change his child's surname should have been granted); *C.B.*, 985 N.E.2d at 347-348 (observing that the father filed a petition to establish paternity, paid support, exercised visitation, participated in the life of the child, and shared joint legal custody of the child, all of which evidenced that his request to change the child's name was in the child's best interest, and concluding that the father's surname would connect the child with his non-custodial parent, which is in the child's best interests).[2]

With respect to the issue of a child support arrearage, Mother asserts that the court incorrectly concluded that Father was not obligated to pay a support arrearage. She argues that she did not present any additional evidence of Father having a child support arrearage because Father admitted during his testimony at the first evidentiary hearing that he owed just over seven thousand dollars in child support arrearage and that, moreover, there was no evidence presented regarding any gifts that she accepted on Father's behalf in lieu of child support. Father argues that, because Mother failed to present evidence to

---

[2] In support of her position, Mother cites *In re Paternity of M.O.B.*, 627 N.E.2d 1317 (Ind. Ct. App. 1994). In that case, the father testified that his surname "was an honorable name that he would 'truly like' to have carried on," and the court ordered that the child assume the father's surname. 627 N.E.2d at 1318-1319. On appeal, we noted the evidence presented by the mother regarding the child's name and, with respect to the father's reason for a name change, found that "[e]ssentially, [the f]ather presented evidence that it was in his ([the f]ather's) best interests that [the child] assume the [father's] surname," but that the father "failed to present *any* evidence that the name change was in the best interests of [the child]." *Id.* at 1319. In this case, Father presented evidence, in addition to his testimony regarding his own wish, that it would be in Child's best interest for his last name to be Paternal Name, and we find *M.O.B.* to be distinguishable. *See In re Paternity of N.C.G.*, 994 N.E.2d at 336 (noting that the father testified that giving the child his surname would cement the parental bond between himself as the noncustodial parent and the child, that this was unlike the father in *M.O.B.*, and that "[t]he distinction is that the latter has nothing to do with the child's best interest, but rather, concerns only the father's interest").

the trial court concerning a support arrearage or to develop any argument to this Court, she waived her claim. Specifically, he argues that Mother concedes that she did not present any evidence of Father having a child support arrearage, that his statement at the hearing that he owed support was elicited by Father's trial counsel and was presented in the context of explaining how he reached his proposed child support payment, that at none of the hearings did Mother assert that an arrearage was actually owed, and that there is no evidence in the record supporting that Father owed or owes an arrearage apart from Father's statement.

[17] The court found in its order that "Mother did not present evidence of Father having retro-active child support arrears" and that "[i]t is the Court's determination that Mother accepted all the gifts on Father's behalf to settle any retro-active child support arrears." Appellant's Appendix at 27. The record reveals that, at the March 14, 2013 hearing, Father's counsel called Father as a witness and presented evidence of the weekly gross income of Father and Mother for the purpose of calculating Father's weekly child support obligation. Father testified as to his regular employment earnings, his part-time earnings, and Mother's employment earnings, and he presented a child support obligation worksheet. After Father's worksheet was admitted into evidence, he indicated in response to his counsel's questions that an arrearage accumulated prior to the preliminary hearing. When asked by his counsel if he knew the amount of the arrearage, Father testified: "The better; just over seven thousand dollars, I believe." Transcript at 45. Father then indicated that he understood

he had to work on the reduction of the arrearage. When asked, "[o]n top of what you are suggesting as being an appropriate child support amount of one hundred and sixty seven, are you willing to pay an additional twenty dollars per week toward the; that would go towards the reduction of that arrearage," Father answered "Yes." *Id.*

[18] Mother does not point to the record to show evidence of an order to pay child support that existed prior to the court's Preliminary Agreed Order of August 15, 2012 Hearing. Additionally, the August 15, 2012 order makes no reference to a child support arrearage having accumulated as of that date. Further, Mother does not point to the record to show that she presented any evidence of Father having a child support arrearage or the amount of any such arrearage, and in fact she acknowledges on appeal that she did not present any such evidence. Moreover, she did not request the court to make a determination of the amount of any arrearage. *See* Ind. Code § 31-16-12-3 (providing that the court, upon request of a person or an agency, may issue an order that contains a determination of the amount of child support arrearage due). We cannot say the court erred in finding that Mother did not present evidence of Father having a child support arrearage, and in therefore finding no arrearage.

## *Conclusion*

[19] For the foregoing reasons, we affirm the court's June 25, 2014 final order.

[20] Affirmed.

Crone, J., and Pyle, J., concur.