

FILED

May 11 2016, 8:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan M. Young
Law Office of Jonathan M. Young,
P.C.
Newburgh, Indiana

ATTORNEY FOR APPELLEE

Warren C. Mathies
Long & Mathies Law Firm, P.C.
Boonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Korie M. Leslie,

*Appellant-Respondent*,

v.

Jeremy D. Farmer,

*Appellee-Petitioner*.

May 11, 2016

Court of Appeals Case No.
87A01-1508-JP-1164

Appeal from the Warrick Superior
Court

The Honorable Robert R.
Aylsworth, Judge

Trial Court Cause No.
87D02-1002-JP-4

**Brown, Judge.**

[1] Korie M. Leslie ("Mother") appeals the trial court's order granting the request of Jeremy D. Farmer ("Father") to change the last name of B. ("Child") to Father's last name. Mother raises one issue which we revise and restate as whether the court abused its discretion in granting Father's request. We affirm.

## Facts and Procedural History

[2] Father filed a petition to establish paternity on February 5, 2010, requesting an order for testing to determine if he was the biological father of Mother's unborn child. Child was born on August 30, 2010. An entry in the chronological case summary ("CCS") in February 2011 states the court was advised that one issue remained unresolved and that, by agreement of the parties, a hearing was scheduled on the issue of who will supervise Father's parenting time. On July 20, 2011, the court entered an Agreed Order stating that, based on DNA testing, Father is the biological father of Child, ordering that Mother have primary physical and sole legal custody of Child, setting Father's parenting time, determining that Father shall pay Mother child support of seventy-one dollars per week effective September 3, 2010, acknowledging that the parties' agreement that Father's support arrearage was $3,266 as of July 15, 2011, and ordering Father to pay Mother $1,629.63 for childbirth expenses and $1,500 for her attorney fees.

[3] Mother filed an information for contempt in September 2011, and a CCS entry on October 18, 2011, states: "Mother and attorney appear. Father, appears pro se. Agreement recited. Father has paid money due. No sentence on I/C ordered and father to pay as recited." Appellant's Appendix, Volume 1, at 6.

An entry on October 20, 2011, states: "Agreed order on contempt entered. . . . Court clarifies 10-18 minute to confirm father has made payments toward amounts due, but all amounts due have not been made." *Id.*

[4]   Mother filed a petition to modify on February 14, 2012, and Father filed a petition to modify on March 8, 2012. On April 17, 2012, the court entered an Agreed Order of Modification stating that the parties withdrew their petitions and would remain as joint legal custodians of Child, and setting forth Father's regular and holiday parenting time.

[5]   In August 2014, Father sent an email message to Mother regarding changing Child's last name, stating that, with Child starting preschool and Mother about to be married, he wanted Child's last name changed from Mother's last name ("Maternal Name") to Father's last name ("Paternal Name") since he expected Mother to accept her new husband's last name. Mother replied that Child's last name would not be changed. An entry in the CCS on October 15, 2014, reflects that Mother filed an information for contempt, an entry in the CCS the following day shows a hearing scheduled, and a later entry shows the hearing was rescheduled for May 6, 2015.

[6]   An entry on October 16, 2014, states that Father by counsel filed a petition for change of name.[1] An entry in the CCS which was input on May 7, 2015, states that the parties and counsel appeared at a hearing on miscellaneous issues on

---

[1] The petition is not included in the record.

May 6, 2015, that the information for contempt had been satisfied with the payment of $1,450 paid by Father on that date, that the parties stipulated that Father overpaid ninety-six dollars on his regular child support, and that the court, upon request by Mother's counsel, ordered Father to pay $500 toward Mother's attorney fees.

[7] On July 16, 2015, the court held a hearing on Father's petition for change of name. He testified that he had to fight to establish paternity, that he was current on his child support, and that, throughout Mother's different fiancés and the different places where Child has lived, he has consistently exercised his parenting time. He testified that Child would turn five years old on August 30th, that, at the time Child was born, Mother was with a man and they later broke up, that Mother then became engaged to another man and they lived together, and that she then became engaged to her current husband. Father testified he had taken Child to Orlando, Florida three times in the last three years, that he exercises parenting time every other weekend and every Wednesday from 3:00pm to 7:00pm, and that he attended Child's games.

[8] On cross-examination, Father indicated he had not had any problems with access to Child's school records due to having a different last name than Child. When asked if he thought Mother was "a good mom," Father replied "100%." Transcript at 14. He stated that he had worked with Child on writing her Paternal Name just as Mother had worked with her on writing her Maternal Name. When asked if he thought that was confusing to Child, he replied "[n]ot any more confusing than having three different fiancés in four years," and when

asked if both were confusing, Father answered "[y]es . . . they are both confusing at different levels." *Id.* at 16-17. When asked if the only time he had been current in child support in Child's life was from May 2015 until the hearing, Father answered that, since he was unable to see Child for the first six months of her life, he had started out in arrears, that he had to pay Mother's attorney fees, and that he had been paying his arrearage until a year earlier. He stated that his parents, grandparents, brother, sister, and an aunt and two uncles have the Paternal Name, and that, except for one uncle, they all lived in the Evansville area. Father indicated that he had been arrested four times, he had two DUIs, and that a charge of battery resulting in bodily injury as a class A misdemeanor from May 2013 was set for trial. He also acknowledged a collection matter involving a $500 credit card bill. When asked if he had two other opportunities to ask for Child's name to be changed, Father answered that he was "advised by [his] lawyer the first time that we agreed to . . . the order that since she was dating a guy and gonna be married to him soon that we should do what we could to get as much time with her as we could," that "then once they got married her name changed and we'd switch," and that "[t]he same thing has happened two more times since then." *Id.* at 25.

[9] Mother testified that Child was enrolled in preschool under the Maternal Name, she has health insurance for Child under the Maternal name, Child is known in the community and identified by her doctor by that name, Child has savings bonds in that name which were purchased by Mother's grandmother, and that Child's birth certificate bears her Maternal Name. Mother further

testified that she married her current husband in September 2014 and that her last name is hyphenated, using Maternal Name as the first portion and her current husband's name as the second portion. She also indicated that she uses the Maternal Name on her business cards and that she had no criminal record above an infraction.

On cross-examination, when asked if the new baby she was carrying was going to take the name of Maternal Name, or a hyphenated name, Mother answered that "[w]e're still deciding the child's name." *Id.* at 45. When asked why she did not take her current husband's name, Mother testified that she kept the Maternal Name because it was Child's last name and that she kept the Maternal Name on her business card because she was known by that name in connection with her job and it was just simpler.

Following arguments by counsel, the court stated:

> I think that current state of the law basically settles the issue for the court. The facts of this case are very similar, I think to [*In re Paternity of N.C.G.*, 994 N.E.2d 331 (Ind. Ct. App. 2013),] where the court of appeals unanimously reversed the Allen County court that refused to change the name to the father's surname. Judge Baker's opinion appears very clear as to the current state of the law when the father pays his child support, there is no evidence other than [Father] is currently current in the payment of his support, has been actively involved in the child's life and demonstrated that he wants to solidify his bond with the child. Judge Baker . . . writes that . . . an examination of our evolving case law indicates that so long as the father pays child support, exercises parenting time and actively participates in the child's life, then the best interest of the child may be served by giving the

child the father's surname to reinforce the bond between the father and his non-marital child, particularly if the father is the non-custodial parent such as we have here. Because the father has paid child support, exercised parenting time, actively participated in NCG'S life and demonstrated that he wants his son to have his name to solidify the bond that father has with his non-custodial son, we reverse the judgment of the trial court that refused to grant the father's petition.

The father in this case in fact filed the petition to establish his own paternity over [Child] and has pursued his rights throughout the case regarding his daughter. The parties['] relationship has been difficult throughout, sometimes that may be an understatement but has been and continues to be difficult between [M]other and [F]ather of [Child] here. [Father] has proved that the change is in [Child's] best interest at this time. The court would grant [Father's] petition for the change of name to [Paternal Name], and [Child's] birth records should be amended to reflect the order change of the surname to [Paternal Name]. The court of appeals in the NCG on a subsequent page indicated that the change of name was a tangible reminder that a child has two parents, and not just one parent, I think that applies in this case as well especially because of the difficult relationship between the parties. It's the right time to do this before [Child] enters public school and with the parties['] help she should adjust quickly, so, I think under the current state of the law as I understand it to be and based upon the facts and circumstances of the case, [Father] has proved it is in his daughter's best interest to have the change of name be done to [Paternal Name] and the court will grant the petition, enter the order accordingly. . . .

*Id.* at 55-57. The court entered a written order dated July 16, 2015, granting Father's request that Child's last name be changed to the name of Paternal Name.

## *Discussion*

[12]     The issue is whether the trial court abused its discretion in granting Father's request to change the last name of Child to the name of Paternal Name. We review a trial court's order granting or denying a biological father's request to change the name of a nonmarital child for an abuse of discretion. *In re Paternity of N.C.G.*, 994 N.E.2d 331, 334 (Ind. Ct. App. 2013). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Findings of fact are clearly erroneous when the record contains no evidence to support them directly or indirectly. *Id.* at 334-335. A judgment is clearly erroneous when the findings of fact do not support the conclusions of law or the conclusions of law do not support the judgment. *Id.* at 335.

[13]     Mother contends that the change of Child's name is not in Child's best interests, that Father only became current on child support in May 2015 after filing his petition for name change, and that his support payment history was sporadic prior to catching up just prior to the hearing. She argues that Father has a criminal history, Child would be confused if her name were to change, Child holds property in the name of Maternal Name, and that Child is known in her community and school by that name. Mother further argues that "[t]here has to be consideration for the child's age and whether the child's confusion resulting from changing its identity would outweigh any benefit associated with strengthening the child's bond with the Father," Appellant's Brief at 10, that claim preclusion applies as the parties already agreed Child's last name was that

of Maternal Name in the July 20, 2011 Agreed Order Entry, and that the doctrine of laches applies as Father inexcusably delayed in filing his petition. She also claims this case presents the perfect opportunity for this court to impose a requirement that Father should be required to show a substantial change in circumstances warranting the name change similar to the standard of seeking to modify child support.

[14] Father maintains that he has always exercised as much parenting time as allowed, he actively participates in Child's life, he is current on his support payments, and that Child having Paternal Name serves her best interests. Father asserts that Child sharing his name reinforces her bond with him as the noncustodial parent, that the reinforcement is needed because of Mother's repeated attempts to alienate Father from Child, that Mother has lived with four boyfriends since Child's birth and has been engaged to three of them, and that he has had to fight to be recognized as Child's father and for every minute of parenting time.

[15] Ind. Code § 16-37-2-13 provides in part that "[a] child born out of wedlock shall be recorded . . . under the name of the mother; or . . . as directed in a paternity affidavit . . . ." "Nevertheless, a biological father seeking to obtain a name change of his non-marital child bears the burden of persuading the court that the change is in the child's best interests. Absent evidence of the child's best interests, the father is not entitled to obtain a name change." *In re Paternity of N.C.G.*, 994 N.E.2d at 335 (internal quotation marks, brackets and citation omitted).

[16] In *In re Paternity of N.C.G.*, this Court stated:

> In what appears to be an effort to encourage a paternal connection with a father's nonmarital and noncustodial child, recent cases have concluded that it is in the child's best interest to give the child the father's surname when certain indicators are present such as the father pays child support, exercises parenting time, and participates in the child's life. *See C.B. v. B.W.*, 985 N.E.2d 340, 348 (Ind. Ct. App. 2013) (stating that "Father's surname will connect the child with his non-custodial parent and is a tangible reminder to the child that the child has two parents who care for him, which is in the child's best interests")[, *trans. denied*]; *see also Petersen v. Burton*, 871 N.E.2d 1025, 1029 (Ind. Ct. App. 2007) (opining that "the indicators that complying with Father's request [for a name change] is in the child's best interest are that he does pay support, has visitation and participates in the life of his child").

*Id.* We further indicated that, as observed in *C.B.*, having a father's surname under certain circumstances may be in a child's best interest because it is a tangible reminder that the child has two parents and that this is particularly true when the father is the noncustodial parent. *Id.* at 336 (citing *C.B.*, 985 N.E.2d at 348).

[17] In *C.B.*, we observed that, when a surname change is sought in a paternity action, among other factors the trial court may properly consider are whether the child holds property under a given name, whether the child is identified by public and private entities and community members by a particular name, the degree of confusion likely to be occasioned by a name change, the child's desires if the child is of sufficient maturity, the birth and baptismal records of

the child, the school records of older children, health records, and the impact of a name change when there are siblings involved whose names would not be changed. *C.B.*, 985 N.E.2d at 343. We concluded that, "like all children, a child born out of wedlock is better served when he knows and is identified with both parents, and both parents are engaged in his upbringing" and that "[a] child's surname connects the child with the parent." *Id.* at 348. We held that the mother would "have physical custody of the child and, as such, the child will continue to be identified with her and will be connected with her in countless ways, large and small, on a daily basis" and that the father's "surname will connect the child with his non-custodial parent and is a tangible reminder to the child that the child has two parents who care for him, which is in the child's best interests." *Id.*

[18] The record reveals that, while Child was given the last name of Maternal Name at birth, Father filed his petition seeking to establish paternity over six months prior to the birth of Child, and the court subsequently entered the July 20, 2011 Agreed Order which established Father as the father of Child, granted him parenting time, and ordered him to pay support of seventy-one dollars per week effective September 3, 2010. The July 20, 2011 and April 17, 2012 orders did not indicate that Father had made a request, or that the court had made a determination, with respect to a change of Child's last name from that of Maternal Name to that of Paternal Name, and Father testified that he had focused on obtaining parenting time and had decided to wait until Mother was married to request that Child's last name be changed.

[19] The record further reveals that Father consistently exercised his parenting time, took Child on other trips and attended Child's games, that Father's parents, grandparents, and siblings have the Paternal Name and live in the Evansville area, and that Father and Mother share joint legal custody of Child.

[20] As to Father's payment of child support, at the July 16, 2015 hearing, the court took judicial notice of two exhibits admitted at the May 6, 2015 hearing, one of which was a receipt for Father's payment of $1,450 on May 6, 2015, to bring him current on his support, and the other of which contained a history of his support payments showing total distributions of $15,828 and that his first payment was made on September 1, 2011.

[21] The court found Father was current in the payment of his support, is the noncustodial parent, is actively involved in Child's life, demonstrated that he wants to solidify his bond with Child, and had filed the petition to establish his paternity and pursued his rights throughout the case. The court further indicated that the idea in *In re Paternity of N.C.G.* that a change of name was a tangible reminder that a child has two parents is applicable in this case and that it was the right time to change Child's name before she entered public school and with the parties help should adjust quickly. The court found that, based upon the facts and circumstances of the case, Father has demonstrated it is in Child's best interest to have the last name of Paternal Name.

[22] The trial court, in the exercise of its discretion, considered the totality of the circumstances in determining what was in Child's long-term best interest.

Based upon the factors discussed above and the evidence in the record, we cannot say the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Accordingly, the court did not abuse its discretion in granting Father's request for a name change for Child. *See In re Paternity of N.C.G.*, 994 N.E.2d at 334-336 (noting the trial court had found that the father had been paying child support and exercised regular parenting time and holding that the father's petition to change his child's surname should have been granted); *C.B.*, 985 N.E.2d at 347-348 (noting the father filed a petition to establish paternity, paid support, exercised visitation, participated in the life of the child, and shared joint legal custody of the child, and concluding that the father's surname would connect the child with his noncustodial parent, which is in the child's best interests).

## Conclusion

[23] For the foregoing reasons, we affirm the court's order granting Father's petition and ordering that Child's last name shall be that of Paternal Name.

[24] Affirmed.

Baker, J., and May, J., concur.