## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 18 2020, 9:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.B. (Minor Child)

and

C.L. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

September 18, 2020

Court of Appeals Case No.
20A-JT-401

Appeal from the Madison Circuit Court

The Honorable G. George Pancol, Judge

Trial Court Cause No.
48C02-1904-JT-189

**Crone, Judge.**

## Case Summary

[1] C.L. (Mother) appeals an order involuntarily terminating her parent-child relationship with A.B. (Child). She claims that several of the trial court's findings are not proper findings. She also asserts that the trial court abused its discretion in admitting her drug screen results and challenges the sufficiency of the evidence to support the termination order. We affirm.

## Facts and Procedural History

[2] Child was born in April 2013 and is the son of Mother and M.B. (Father).[1] At birth, Child had drugs in his system and had to remain hospitalized for about a month. Upon Child's discharge, the Indiana Department of Child Services (DCS) removed him from Mother and placed him with Father in the paternal grandmother's home. DCS filed a petition to have Child adjudicated a child in need of services (CHINS). Mother was incarcerated at the time. Child was adjudicated a CHINS in May 2013. Father was arrested and incarcerated, and Child remained with his grandmother. After Mother's release from incarceration, DCS released Child to her and dismissed the case.

[3] In August 2016, DCS received a report of Mother's substance abuse issues and domestic violence in the home, removed Child from her care, and filed a CHINS petition. The trial court found Child to be a CHINS and ordered

---

[1] Father is not participating in this appeal.

Mother to undergo a parenting assessment and follow all recommendations; participate in visitation with Child; formulate and implement a child protection plan; participate in home-based counseling; complete a substance abuse assessment and follow all recommendations; attend AA/NA regularly, provide written verification of her attendance, and secure a sponsor for it; refrain from alcohol consumption and from the consumption, manufacture, trade, sale, or possession of illegal substances; submit to random drug screens; obey the law; abide by travel restrictions for Child; secure and maintain stable and safe housing; and secure and maintain a stable and legal income.

[4] In 2018, DCS changed the permanency plan to include a concurrent plan of adoption by Child's paternal grandmother, citing Mother's noncompliance with services, failure to enhance parenting skills, and failure to consistently visit Child, as well as Mother's positive drug screens and arrests. In April 2019, DCS filed a petition for termination of parental rights, citing Mother's continued noncompliance with services, failure to remain in contact with DCS, continued drug use, noncooperation with drug screens or in-home visits, failure to maintain safe and suitable housing, failure to complete the parenting assessment or parenting classes, failure to provide documentation concerning any participation in AA/NA, and failure to follow the recommendations from the substance abuse assessment.

[5] The trial court conducted factfinding hearings in autumn 2019. Mother testified that she was bipolar type two with rapid cycling, that her "psych meds" included lithium, Prozac, and Xanax, and that she had become addicted to pain

medicine. Tr. Vol. 2 at 64, 69. Between 2015 and the 2019 factfinding hearings, Mother was arrested six times in Madison County. Meanwhile, Child had spent thirty-seven months outside Mother's care, had not had a visit with her in two years, and had been living with his paternal grandmother, who expressed her absolute willingness and ability to adopt Child.

[6] In February 2020, the trial court issued an order terminating Mother's and Father's parental relationships with Child. Mother now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[7] Mother contends that the trial court erred in terminating her parental relationship with Child. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re A.G.*, 45 N.E.3d 471, 476 (Ind. Ct. App. 2015), *trans. denied* (2016). Unchallenged findings stand as proven. *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012), *trans. denied*. In conducting our review, we neither reweigh evidence nor judge witness credibility. *E.M.*, 4 N.E.3d at 642. Rather,

we consider only the evidence and inferences most favorable to the judgment. *Id.* "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011) (citations omitted).

## Section 1 – The trial court's findings are not improper.

[8] Mother asserts that several of the trial court's findings are mere recitations of witness testimony. The mere recitation of testimony does not amount to a proper finding of fact; rather, the trial court must adopt the testimony of the witness. *S.L. v. Ind. Dep't of Child Servs.*, 997 N.E.2d 1114, 1121-22 (Ind. Ct. App. 2013). Here, however, when the court referenced the testimony of a given service provider, it specified, "The Court makes the following findings and reasonable inferences from this testimony." *See*, *e.g.*, Appealed Order at 7 (finding 19 concerning family case manager's testimony). The court adequately adopted the testimony and did not simply recite it.

[9] Mother also criticizes the trial court's findings, claiming that the court simply adopted DCS's proposed findings verbatim. We were unable to find a copy of the parties' proposed findings in the record before us, so we have no way of even making such a comparison. That said, we note that a trial court's verbatim adoption of a party's proposed findings is not prohibited. *Country Contractors, Inc. v. A Westside Storage of Indianapolis, Inc.*, 4 N.E.3d 677, 694 (Ind. Ct. App. 2014). "Although we by no means encourage the wholesale adoption

of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous." *Id*. Mother's arguments concerning the impropriety of the findings lack merit.

## Section 2 – Mother failed to preserve her argument concerning the admissibility of her drug screen results.

[10] Mother challenges the admission of her drug screen results, which are detailed in finding 22(v). That finding comprises a list of ten drug screen results during the pendency of the CHINS proceedings, with each entry including the result (nine positive and one negative), the type of drug(s) for which Mother tested positive, and the concentration of the drug(s) found in her system. Appealed Order at 10.

[11] Mother asserts that the drug screen results were inadmissible hearsay. We review the trial court's admission of evidence for an abuse of discretion, which occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Matter of A.F.*, 69 N.E.3d 932, 942 (Ind. Ct. App. 2017), *trans. denied*. "Errors in admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *Id*. (citation omitted). "Admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence admitted." *Id*. (citation omitted).

[12] DCS claims that Mother did not object on hearsay grounds below and therefore waived this argument for review. A party who objects on one basis below and a

different basis on appeal waives the argument for appellate review. *In re Paternity of K.H.*, 116 N.E.3d 504, 512 (Ind. Ct. App. 2018), *trans. denied* (2019). Likewise, a mere general objection is ineffective to preserve an issue for review. *Raess v. Doescher*, 883 N.E.2d 790, 797 (Ind. 2008). An objection must be contemporaneous and sufficiently specific to alert the trial court as to its grounds and thus fully apprise the court of the legal issue. *Id*.

[13] At the factfinding, DCS introduced the certified CHINS record, which included the information to which Mother now objects. Mother herself responded, not in the form of an objection but by interrupting her counsel with an exclamation that was partially inaudible, largely incoherent, and did not address hearsay. Tr. Vol. 2 at 27. Moments later, when DCS again sought to introduce the CHINS record, Mother's counsel indicated that Mother had no objection. *Id*. at 29. The closest Mother ever came to raising a hearsay objection occurred when DCS sought to introduce the laboratory results as a separate exhibit, and Mother's counsel indicated a concern over authenticity and how the tests were conducted. *Id*. at 31. This simply does not amount to a clear and contemporaneous hearsay objection. As such, Mother has failed to preserve this allegation of error for review. Waiver notwithstanding, the record is replete with unchallenged testimony about Mother's drug use. Therefore, the challenged evidence is cumulative, and Mother's substantial rights were not prejudiced by the admission of the drug screen information that served as the basis for finding 22(v).

# Section 3 – Mother has failed to establish that the trial court clearly erred in terminating her parental relationship with Child.

[14]     Mother asserts that the trial court clearly erred in terminating her parental rights. "Parents have a fundamental right to raise their children – but this right is not absolute. When parents are unwilling to meet their parental responsibilities, their parental rights may be terminated." *Matter of Ma.H.*, 134 N.E.3d 41, 45-46 (Ind. 2019) (citation omitted), *cert. denied* (2020). To obtain a termination of a parent-child relationship, DCS is required to establish in pertinent part:

> (A) that one (1) of the following is true:
>
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> ….
>
> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[15] In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied.* "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted). "[I]f the court finds that the allegations in a [termination] petition … are true, the court *shall* terminate the parent-child relationship." Ind. Code § 31-35-2-8(a) (emphasis added).

[16] Mother focuses her argument solely on the trial court's conclusion that a reasonable probability exists that the conditions that led to Child's removal and continued placement outside the home will not be remedied.[2] When assessing

[2] Indiana Code Section 31-35-2-4(b)(2)(B) requires proof of only one of the three circumstances listed. The record shows that Child has twice been adjudicated a CHINS. Ind. Code § 31-35-2-4(b)(2)(B)(iii). Here, however, Child's two CHINS adjudications were neither alleged by DCS nor found by the trial court to be a basis for termination. As such, we analyze the merits of Mother's argument concerning the reasonable probability of unremedied conditions.

whether there is a reasonable probability that conditions that led to a child's removal will not be remedied, we must consider not only the initial basis for the child's removal but also the bases for continued placement outside the home. *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*. Moreover, "the trial court should judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *E.M.*, 4 N.E.3d at 643. "Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *J.T.*, 742 N.E.2d at 512. In making its case, "DCS need not rule out all possibilities of change; rather, [it] need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). The court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

[17] Mother claims that the record is not entirely clear as to the conditions that led to Child's initial removal. She characterizes as clearly erroneous findings 19(d) and 22(d), both of which reiterate DCS's reasons for initial removal: drug use

and domestic violence. She is correct that there is no evidence of domestic violence in the record. Nevertheless, it is understood that DCS makes its initial determinations based on reports received, that CHINS petitions include *allegations* based on those preliminary reports, and that DCS conducts follow-up investigations and presents those to the trial court. There may be a dearth of evidence of domestic violence, but there is overwhelming evidence to substantiate the allegation of Mother's drug abuse, which has been pervasive and protracted. Mother admits that she became addicted to her pain medications and that she took various "psych meds," such as lithium, Prozac, and Xanax to combat her post-traumatic stress disorder and bipolar type two rapid cycling disorder. Tr. Vol. 2 at 64, 69. The DCS family case manager testified that there was a period of two years during which Mother failed to submit to any of her required drug screens and her whereabouts were unknown. *Id*. at 33, 37. Despite this gap, Mother had a pattern of testing positive when she was screened.

[18] Finally, Mother asserts that DCS established no nexus between her drug use and her neglect of Child. We could not disagree more. The disturbing nexus predates the current CHINS proceedings and extends back to Mother's pregnancy with Child, during which she tested positive for drugs three times. As a result, Child was born drug-addicted and had to remain hospitalized for his first month of life while withdrawing from those drugs. After his discharge, Child was removed from Mother and eventually adjudicated a CHINS. Meanwhile, Mother was in and out of jail and continued to use drugs. She was

afforded a second chance to parent Child, but even then, she could not refrain from drug use or maintain a safe and suitable environment for him, so most often she left him with his paternal grandparents. This precipitated his removal and his second CHINS adjudication by age three. Again, Mother failed to comply with services, continued to test positive for drugs, and simply did not avail herself of the opportunity to show that she was earnest about getting clean and becoming a better mother. She was arrested six times in Madison County between 2015 and 2019, and her pattern of being in and out of jail is not conducive to providing a stable home for Child. The current proceedings have lasted more than three years, and, as of the time of the factfinding hearings, Mother had not visited Child in two years. This failure demonstrates her lack of commitment to complete the steps necessary to preserve her parental rights. *See Lang*, 861 N.E.2d at 372 (failure to exercise right to visit one's children demonstrates lack of commitment to complete actions necessary to preserve parent-child relationship).

[19] Mother's drug use has essentially defined Child's life. Her failure to improve after the dismissal of the first CHINS case portends a similar outcome now. Her behavior during the factfinding hearings reflects an attitude of deflection and a stubborn refusal to take responsibility for her problems and get herself clean. In short, Child has endured more than six years of instability and uncertainty, and there is a reasonable probability that the drug use that led to his removal from and continued placement outside of Mother's home will not be remedied. Based on the foregoing, we conclude that Mother has failed to

establish clear error in the trial court's decision to terminate her parental relationship with Child. Accordingly, we affirm.

[20] Affirmed.

Robb, J., and Brown, J., concur.